44890. JACKSON ELECTRIC MEMBERSHIP CORPORATION
v. GEORGIA POWER COMPANY et al.
(364 SE2d 556)

HUNT, Justice.

Jackson Electric Membership Corporation (JEMC) sued Marriott Corporation for breach of contract and Georgia Power for tortious interference with its contract with Marriott and sought, moreover, to enjoin service of electrical power to Marriott by Georgia Power. JEMC appeals the grant of summary judgment to Marriott and Georgia Power. We reverse.

The Georgia Territorial Electric Service Act, under OCGA § 46-3-1 et seq., provides that a new consumer, "having single-metered service and a connected load which, at the time of initial full operation of the premises, is 900 kilowatts or greater," may choose between the primary and secondary electrical suppliers in the consumer's geographical area. OCGA § 46-3-8. Accordingly, during 1985, both Georgia Power and JEMC contacted Marriott regarding its planned construction of a Marriott Courtyard Hotel in Gwinnett County.

In December 1985, JEMC, after negotiating and supplying a written proposal, sent a letter to Marriott enclosing a blank form entitled "Request for Service" which "when executed, . . . will signify a mutual agreement for services between our two companies." A representative from Marriott's Operations Division completed and returned the request form. In keeping with a prior agreement between JEMC and Georgia Power to apprise one another when a potential customer had made its selection, JEMC sent a copy of the completed form to Georgia Power. Georgia Power then contacted those with whom it was negotiating in Marriott's Architectural and Structural Division and was informed that the Operations Division employees who had signed the form were not authorized to make such a contract. Relying on this information, Georgia Power continued to negotiate with Marriott until a contract to provide electricity to the Marriott Courtyard was eventually signed on March 13, 1986.

On March 15, JEMC sent an application for membership to Marriott, but it was never completed. After admitting that the predicament with JEMC was caused by "miscommunication" within the Marriott organization, Marriott notified JEMC that it was choosing Georgia Power.

JEMC petitioned the Public Service Commission, claiming that because the construction phase of the project was less than 900 kilo-

watts, Marriott was not entitled to use Georgia Power as a secondary supplier for its construction phase. The PSC *preliminarily* ruled that since the completed project would require over 900 kilowatts, the construction part of the project was also subject to competitive bidding. Thus, Georgia Power was authorized to provide construction service to Marriott.

JEMC then filed this suit contending Marriott had breached its contract and that, in addition, Georgia Power had tortiously interfered with that contract to provide Marriott permanent electrical service. JEMC sought damages and an injunction against Georgia Power's supplying power to the Marriott Courtyard. We affirmed the denial of a preliminary injunction in *Jackson EMC v. Ga. Power Co.*, 256 Ga. 605 (353 SE2d 3) (1987).

The trial court, while agreeing that questions of fact exist about the authority of the Marriott employees who signed the request for service form, nonetheless concluded that Marriott and Georgia Power were entitled to summary judgment on either of two bases. First, it ruled that because Marriott had not applied in writing to JEMC for membership and as a consequence had not been accepted by JEMC as a member, JEMC was not bound to provide Marriott with electrical service. Hence, the trial court decided that since JEMC could refuse to accept Marriott as a member, the attempt to contract failed due to lack of mutuality of obligation. Second, it held that PSC's decision was res judicata as to the issue whether Marriott had contracted with JEMC or with Georgia Power.

1. The first issue in this appeal is whether the contract failed due to lack of mutuality of obligation, as argued by both Marriott and Georgia Power and as found by the trial court.

Our view of the requirement that Marriott be accepted in the membership of JEMC is that it was a condition precedent, not to the existence of the contract, but to the existence and enforcement of an immediate right or remedy.[1] Such conditions are facts and events, which though subsequent to the making of the contract, are nevertheless precedent to the right of immediate performance. See 3A, Corbin on Contracts, § 628.

Here, the contract originally was and primarily is constituted by the parties' exchange of written promises which, notwithstanding the condition of membership, are nonetheless binding. Clearly, the parties intended to enter an agreement: they expressed their mutual intentions to be bound, and a contract was formed. As a result, the two parties are bound by their mutually interdependent promises, includ-

---

[1] The documents which comprise the contract make no specific reference to the membership requirement. They do, however, refer to member-consumers and the parties concede that the bylaws of JEMC require that all customers be members.

ing their implied promises that Marriott would apply for membership in the corporation and that JEMC would grant it.[2] "Agreements of this kind serve a vital purpose. They are entered into with the understanding that both parties are firmly committed to the performance of the agreement, . . . In so doing, however, [each promisor] has impliedly promised to use his best efforts to bring about the happening of the condition to his promise. His conditional promise is by no means illusory." Calamari and Perillo, Contracts, § 71 at p. 139 (1970). See also Restatement, 2nd, Contracts, § 231.

We declared in *Brack v. Brownlee*, 246 Ga. 818, 819 (273 SE2d 390) (1980) that both parties are under an implied duty of good faith in carrying out the mutual promises of their contract. In *Brack*, we held that a contract for the sale of real property which is conditioned upon the purchaser's ability to obtain a loan does not fail for lack of mutuality of obligation as the purchaser has an implied duty to diligently seek to satisfy the financing contingency.[3]

Not only, then, are the parties under an obligation to fulfill the membership condition, nothing in the record suggests that membership application and acceptance are anything more than perfunctory. The record shows that the application fee for membership is $5 and that no applicant has ever been denied membership. Would it not defy reason to suggest that JEMC, after having solicited the business of so major a customer, would then deny it membership in the corporation?

In sum, on this issue we hold that a contract was formed by the exchange of mutually interdependent promises, that membership in the corporation is a condition precedent not to the contract but to the existence and enforcement of an immediate right, that the parties have an implied duty to exercise good faith in accomplishing the condition precedent and that the condition is a mere formality. The grant of summary judgment for lack of mutuality of obligation was error.

2. The claim by Georgia Power and Marriott regarding the second issue, namely, that it has been adjudicated by the Public Service Commission, is without merit. The PSC's hearing was on the limited

---

[2] "While the doctrine of mutuality of obligation may have a core of validity it has clearly been over-generalized and used as a mistaken premise for decisions defeating justified expectations. It has been subjected to so many so-called exceptions and judicial circumventions that it has been suggested that the term 'mutuality of obligation' should be abandoned. More importantly, the misleading notion that both parties must be 'bound' must be dispensed with. . . . *[T]he supposed requirement of mutuality of obligation is merely one of mutuality of consideration: Each contracting party must supply consideration to the other.*" (Emphasis supplied.) (Footnote omitted.) Calamari and Perillo, Contracts, § 67 at p. 131 (1970).

[3] Compare Uniform Commercial Code, OCGA § 11-1-101 et seq., "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement."

question whether Georgia Power was authorized to provide temporary service to Marriott during the construction phase. Furthermore, the record shows that that proceeding has never become final. OCGA § 9-12-40. Finally, we do not find that this controversy is within the PSC's exclusive jurisdiction. See *Central of Ga. R. Co. v. Culpepper*, 209 Ga. 844, 848 (76 SE2d 482) (1953).

3. Marriott and Georgia Power also argue that the contract fails for indefiniteness. However, JEMC's letter referring to its written proposal, together with Marriott's written acceptance, belie their assertion. *Touche Ross & Co. v. DASD Corp.*, 162 Ga. App. 438, 440 (292 SE2d 84) (1982).

4. Because of our decision in Division 1, we need not reach the other issues raised in this appeal. The trial court's grant of summary judgment to Georgia Power and Marriott is reversed, and the case is remanded to the trial court for determination of the remaining fact issues.

*Judgment reversed and remanded. All the Justices concur.*

DECIDED FEBRUARY 4, 1988.

*Sutherland, Asbill & Brennan, Charles T. Lester, Jr., Thomas A. Cox, Jordan & Jordan, Hill R. Jordan,* for appellant.

*Troutman, Sanders, Lockerman & Ashmore, Robert P. Edwards, Jr., Charles F. Palmer, Hart & Sullivan, Michael G. Frick,* for appellees.