A06A2195. PROFESSIONAL STANDARDS COMMISSION
v. PETERSON et al.
(643 SE2d 899)

BARNES, Chief Judge.

The Professional Standards Commission (PSC) appeals a superior court's decision to reverse a PSC ruling that sanctioned two elementary school teachers. For the reasons that follow, we affirm.

The evidence shows that Ray and Sharon Peterson are elementary school teachers in Atkinson County, and their teenage daughter attends the county high school. The elementary school's assistant principal told the principal that she heard alcohol had been served to underage teenagers at a party at the Petersons' house, and that there

---

were pictures "flying around" of teenagers holding beer cans at that party. The principal called the school superintendent and reported the hearsay, because Atkinson County is a small community and he did not want anyone to think he had covered up information about the party. The superintendent called the high school principal and directed him to investigate the matter. A board member asked the superintendent to also investigate what happened at another party in the summer of 2003 at the Petersons' house.

The high school principal interviewed 11 students, as instructed, and they confirmed that they had attended a party at the Petersons' house in October 2003 where underage teenagers were drinking. Nine students said that the Petersons did not know about the drinking and two students said they did. The principal confiscated the pictures, some of which showed teenagers holding beer cans, and delivered his notes to the superintendent. After conferring with members of the school board, the superintendent sent a report to the PSC, which found probable cause that the Petersons had violated the Code of Ethics for Educators and proposed a one-week suspension of their teaching certificates.

The Petersons requested a hearing before an administrative law judge (ALJ), and the PSC filed its "Statement of Matters Asserted," which laid out the charges against the teachers. The PSC claimed that the Petersons hosted two parties at which students were intoxicated, one in the summer of 2003 and the other in October 2003. The agency alleged that two male students began fighting at the summer party, that Ray Peterson had to intervene, and that one of the students was intoxicated and had to be driven home. Additionally, the PSC contended that about 50 students attended the October party, that many were drinking alcohol and were intoxicated, that "at least" one student became physically ill in the Petersons' house, and that students photographed each other inside the house holding alcoholic beverages. The Petersons denied the charges, and the ALJ held a hearing.

Eight students testified, as well as the Petersons, their daughter, the two principals, and the superintendent. The superintendent testified that he interviewed a young man who had attended the Petersons' summer party, who said that Ray Peterson broke up a fight between him and another attendee. The superintendent thought that Peterson conducted himself professionally. Peterson testified that the young man arrived intoxicated, that he broke up a fight, and that he sent the young man home "so his own parents could deal with him."

Regarding the October party, five of the students and the Petersons' daughter testified that the teenagers were hiding the alcohol, which everyone agreed that the Petersons did not furnish, and three

students testified that the alcohol was not concealed. The Petersons testified that they were in the house for all but about 45 minutes to an hour, when they left to pick up pizza for the party, and their daughter testified that the pictures of teenagers holding beer cans inside the house were taken then.

After reviewing the evidence presented, the ALJ found that the Petersons had not violated any ethical standards at the summer party, where an uninvited student who was already intoxicated came to the house, started a fight, and had to be physically restrained and taken home. The ALJ further found, however, that the teachers violated Standard 10 of the Code of Ethics for Educators at the October party. That standard provided that an educator should demonstrate conduct that follows generally recognized professional standards. Unethical conduct impairs the educator's "ability to function professionally in his or her employment positions or conduct that is detrimental to the health, welfare, discipline or morals of students," including inadequate supervision, the ALJ held. In light of the testimony that 75 to 100 teenagers were present at this party, many of whom were drinking, the ALJ found that the Petersons were either inadequately supervising the party or were being untruthful when they denied knowing about the drinking, and recommended that the PSC's sanction be affirmed.

The Petersons requested agency review, and after hearing oral argument, the PSC voted to uphold the recommendation of the ALJ. The Petersons then petitioned the superior court for judicial review pursuant to OCGA § 50-13-19. After hearing oral argument and reviewing the evidence and documents of record, the superior court reversed the PSC, finding that the agency's decision was clearly erroneous because it presented no evidence that the Petersons' conduct impaired their ability to function professionally or constituted a pattern of behavior detrimental to students. The court also found that the regulation was void for vagueness as it gave no notice that failure to oversee their daughter's friends' alcohol in their home would equal a violation. The court further held that the regulation was applied subjectively, arbitrarily, and discriminatorily, because the record indicated that students had been drinking alcohol at their prom on school property, and none of the educators present then had been disciplined. Finally, the court held that imposing a sanction on teachers for failing to catch teenagers drinking alcohol at events not affiliated with the school

> opens the doors to disciplining teachers across this State for activity conducted at their home, outside the classroom, and unrelated to school functions or obligations, which has no

bearing on their students, no bearing on their professional ability as an educator, and is solely an attack on their ability as a parent.

On appeal, the PSC argues that the superior court erred in reversing the sanction, because the agency's decision was not clearly erroneous and because the standard was not void for vagueness.

1. Under the Administrative Procedure Act, an administrative agency's findings and conclusions may be reversed by the superior court if they are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." OCGA § 50-13-19 (h) (5). This language has been interpreted to preclude review if "any evidence" on the record substantiates the administrative agency's findings of fact and conclusions of law. The presence of conflicting evidence is sufficient to satisfy the any evidence standard. Upon further discretionary appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency.

(Citations and punctuation omitted.) *Professional Standards Comm. v. Alberson*, 273 Ga. App. 1, 4 (1) (614 SE2d 132) (2005). The PSC contends that its conclusion that the Petersons violated Standard 10 of the Code of Ethics for Educators was not clearly erroneous. The standard as it existed in October 2003 provided that

[a]n educator should demonstrate conduct that follows generally recognized professional standards. Unethical conduct is any conduct that impairs the certificate holder's ability to function professionally in his or her employment position (e.g., harassment of colleagues, misuse or mismanagement of tests, test materials or test items, uncontrolled anger, etc.) or a pattern of behavior or conduct that is detrimental to the health, welfare, discipline, or morals of students (e.g., inappropriate language, physical altercations, inadequate supervision, inappropriate discipline, etc.).

Ga. R. & Regs. r. 505-6-.01 (3) (j) (2003).[1]
The PSC contends that sufficient evidence exists in the record that the Petersons' conduct in failing to monitor alcohol consumption

---

[1] The regulation has since been amended.

by underage teenagers at their daughter's party constituted inadequate supervision that was detrimental to students, whether they knew about the drinking or not. The agency also notes that some of the students testified that Sharon Peterson walked through the house while people were drinking alcohol openly, and that this evidence supports the agency's decision to sanction the two teachers.

Pretermitting whether the evidence established a single instance of inadequate supervision that violated the educators' ethical code, nothing in the record establishes a *pattern* of inadequate supervision, which is one of two ways the standard can be violated. The ALJ found that the Petersons took appropriate action at the summer party, and no one testified otherwise. Thus the ALJ's conclusion that the Petersons violated Standard 10 due to a pattern of inadequate supervision is clearly erroneous.

The agency also contends that the record establishes that the Petersons' failure to curtail the underage drinking impaired their ability to function professionally, the second way the standard can be violated. While the superior court concluded that no evidence established that the Petersons' ability to function professionally was impaired, neither the ALJ nor the agency on review found that the Petersons violated the standard on that basis.

Further, even if they had found that the Petersons violated the standard because their ability to function professionally was impaired, the superior court did not err in its conclusions. While the elementary school principal testified that the community was talking about the party and the pictures were being passed around, he also said that the Petersons were outstanding teachers whose professionalism was not affected. He only reported the rumors to his supervisor because he did not want to be seen as covering up anything. The high school principal testified that he only investigated the issue because his supervisor directed him to do so, even though the Petersons did not teach at the high school and the incident did not happen at school. In fact, he offered Ray Peterson a job after this incident took place. The mothers of two teenagers who attended the October party testified that they thought highly of the Petersons before and after the party. Both testified that no parents in the community had any problem with the Petersons as a result of this party and noted that the small community did not have a lot of activity to offer teenagers. The young people congregated at the house and "a couple chose to let things get out of hand."

The superior court did not err in finding that the agency's decision to sanction the Petersons with one-week suspensions of their teaching certificates was clearly erroneous.

2. Based on our holding in Division 1, the remaining enumeration of error regarding the constitutionality of the statute is moot.

*Judgment affirmed. Bernes, J., concurs and concurs specially. Andrews, P. J., concurs specially.*

ANDREWS, Presiding Judge, concurring specially.

The ALJ's decision, which was adopted as the final decision of the Professional Standards Commission (the Commission), found that:

> As disclosed by the evidence, as many as 75 to 100 students were at the [Petersons'] residence that evening and a substantial number of those students were consuming alcohol, either in bottles, cups or cans, and, to a great degree, openly. The alcohol was being consumed both inside and outside the residence. Some of the testimony also placed Mrs. Peterson in the presence of students as they were drinking. . . . For the [Petersons] to have been present for all but 45 minutes during the course of the entire evening and to profess that they had no knowledge that the students were consuming alcohol at their residence indicates either that they were providing inadequate supervision to such a degree that students were allowed to consume alcohol or that they were being untruthful when they denied having any such knowledge. In either circumstance, the [Petersons] violated Standard 10.

I reluctantly concur in the majority's conclusion that there was an inadequate basis to find that the Petersons violated Standard 10 of the Code of Ethics for Educators because unethical conduct under Standard 10 involves only "conduct that impairs the certificate holder's ability to function professionally in his or her employment position . . . or a pattern of behavior or conduct that is detrimental to the health, welfare, discipline, or morals of students. . . ." Ga. R. & Regs. r. 505-6-.01 (3) (j) (2003). There was no evidence that knowingly allowing underaged high school students to illegally consume alcohol at their residence impaired the Petersons' ability to function professionally in their employment positions at the elementary school, as required by Standard 10. Although the ALJ found evidence that the Petersons engaged in conduct detrimental to the health, welfare, discipline, and morals of the students at their residence, there was no evidence that the Petersons engaged in a pattern of such behavior or conduct, as required by Standard 10.

Nevertheless, it should be noted that the Code of Ethics for Educators provides that the type of conduct at issue in this case is unethical conduct justifying disciplinary sanction. Standard 2 of the Code provided at the time of the conduct at issue and presently that:

An educator should always maintain a professional relationship with all students,[2] both in and outside the classroom. Unethical conduct includes but is not limited to . . . furnishing tobacco, alcohol, or illegal/unauthorized drugs to any student or allowing a student to consume alcohol, or illegal/unauthorized drugs.

Ga. R. & Regs. r. 505-6-.01 (3) (b) (6) (2003). In its written complaint, the Commission notified the Petersons that their conduct was being investigated as a violation of Standard 10 of the Code, and the ALJ and the Commission found only a violation of Standard 10. Under OCGA § 20-2-984.4 (c), the Commission's investigation of the Petersons "is limited to the matters asserted in the written complaint unless additional written complaints are filed." See Ga. R. & Regs. r. 505-6-.01 (2) (d). On the present facts, Standard 2 was the applicable section of the Code of Ethics for Educators.

I am authorized to state that Judge Bernes joins in this opinion.

DECIDED MARCH 22, 2007.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Stefan E. Ritter, Assistant Attorney General, Penny Hannah,* for appellant.
*Langdale & Vallotton, W. Pope Langdale III,* for appellees.

---

[2] " 'Student' is any individual enrolled in the state's public or private schools from preschool through grade 12 or any individual between and including the ages of 3 and 17." Ga. R. & Regs. r. 505-6-.01 (2) (c) (2003).