A08A1210. JACKSON ELECTRIC MEMBERSHIP CORPORATION v. GEORGIA PUBLIC SERVICE COMMISSION.
(668 SE2d 867)

MILLER, Judge.

Jackson Electric Membership Corporation ("Jackson EMC") appeals from the trial court's order affirming the decision of the Georgia Public Service Commission ("Commission") finding that

---

[8] (Punctuation and footnotes omitted.) *Lumpkin v. Mellow Mushroom*, 256 Ga. App. 83, 85 (567 SE2d 728) (2002).

Free Chapel Worship Center ("Free Chapel") had chosen Georgia Power Company ("Georgia Power") as its electric service provider. Jackson EMC argues that the trial court erred in affirming the Commission's decision because the Commission's decision (1) erroneously found that Georgia Power did not fraudulently induce Free Chapel to sign a "Request for Electric Service" form ("Request Form") by misrepresenting certain facts; (2) ignored Court of Appeals precedent that a contract is required to make a binding selection under the Georgia Territorial Electric Service Act ("Territorial Act"); (3) interpreted the Territorial Act so as to defeat legislative intent and deprive "large load" customers of their rights under the Act; (4) erroneously found that the Request Form met the essential requirements of a contract; (5) erroneously found detrimental reliance by Georgia Power; and (6) improperly relied on evidence of the standard practices of nonparties. Finding that the Request Form constituted a binding contract between Free Chapel and Georgia Power, we affirm.

> Under the Administrative Procedure Act, an administrative agency's findings and conclusions may be reversed by the superior court if they are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. This language has been interpreted to preclude review if *any evidence* on the record substantiates the administrative agency's findings of fact and conclusions of law. The presence of conflicting evidence is sufficient to satisfy the any evidence standard. Upon further discretionary appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency.

(Citation and punctuation omitted; emphasis supplied.) *Professional Standards Comm. v. Peterson*, 284 Ga. App. 424, 427 (1) (643 SE2d 899) (2007).

The record shows that in April 1999, Free Chapel entered into a land sale agreement to purchase a tract of land in Gainesville for an expansion of its church. On August 25, 1999, the seller and Free Chapel's pastor, Jentezen Franklin, signed an "Amendment" to the land sale agreement. Paragraph 5 of the Amendment provided,

> Seller agrees to have the power line relocated (as stated in the agreement between Seller and Georgia Power) at Seller's expense within 60 days after closing. Purchaser agrees to use Georgia Power in all future uses on said property at rates competitive with other electrical suppliers in the area.

Copies of Georgia Power's Rules, Regulations, and Rate Schedules were publicly available and on its website.

Before closing, Free Chapel's attorney, Edward Hartness, received a Request Form from Georgia Power. The Request Form stated:

I understand that according to the provisions of the Georgia Territorial Electric Service Act, there may be a choice of electric suppliers to provide electric service to [Free Chapel].[1] I choose to take electric service from Georgia Power Company instead of service from any other electric supplier.

Tim Kernen, the church administrator, signed the Request Form on October 25, 1999. Also on October 25, 1999, the seller and Free Chapel entered into an "Addendum" to the land sale agreement. The Addendum provided that "Item 5 of the Amendment to Agreement, dated August 25, 1999, shall survive closing."[2]

On October 26, 1999, Ed Brown, the supervisor of line construction personnel for Georgia Power, sent an e-mail to Georgia Power representatives stating, "Free Chapel Worship Center has purchased the land at McEver Rd. that we have talked about for sometime. The church has signed a letter of intent for us to be the electric supplier and would like the line moved within 60 days."

Within a few weeks after Free Chapel representatives executed the Request Form and the Addendum, Georgia Power began work to service Free Chapel and met with Free Chapel's architects, engineers, and land planners to coordinate relocation of the power line. Georgia Power wrote a letter to Free Chapel, dated November 11, 1999, stating that it was ready to move the power line, but further noting that it would probably be in Free Chapel's interest to wait until the site plan was completed because a second relocation, if necessary, would be at Free Chapel's expense.

---

[1] The Territorial Act establishes a plan whereby every geographic area within the state is assigned to an electric supplier. OCGA § 46-3-2. Once a service territory is assigned, an electric supplier "shall have the exclusive right to extend and continue furnishing service to [any] new premises" within that area. OCGA § 46-3-3 (1). An exception is created by OCGA § 46-3-8 (a), which allows a consumer to choose an electric supplier different from the designated territorial supplier, where service is furnished "to one or more new premises . . . if utilized by one consumer and having single-metered service and a connected load which, at the time of initial full operation of the premises, is 900 kilowatts or greater." OCGA § 46-3-8 (a). Georgia Power is the designated territorial supplier for the region including Gainesville.

The parties agree that Free Chapel qualifies as a large load consumer under OCGA § 46-3-8 (a), and that this status entitles Free Chapel to choose its electric service provider.

[2] Item 5 stated, "Purchaser agrees to use Georgia Power in all future uses on said property at rates competitive with other electrical suppliers in the area."

More than two years after the Request Form was signed, Free Chapel sent out letters to Georgia Power and Jackson EMC, dated April 15, 2002, soliciting bids for electric services. The letter to Jackson EMC stated, "We have signed a 'letter of intent' with Georgia Power as a condition, which required them to move a distribution line at no cost to the church, prior to signing the new facility property sales contract." The letter to Georgia Power read:

> We have previously designated Georgia Power as our source of power for our new facility. Recently, Jackson EMC has contacted us desiring to give us a bid for the power requirements. We told them of our agreement with Georgia Power to move the distribution line. They stated that their bid will also include moving the distribution line on the property at their expense.

Both Georgia Power and Jackson EMC sent proposals to Free Chapel. Free Chapel compared the proposals and concluded that Jackson EMC's proposal was better. On July 19, 2002, Jackson EMC signed an agreement with Free Chapel to be Free Chapel's electric service provider. In a letter dated July 23, 2002, Free Chapel notified Georgia Power that it "neither made a valid election [of an electric service provider] nor entered into a valid contract with Georgia Power," that it had determined that Jackson EMC's bid was better, and that therefore it would not require Georgia Power's services. Jackson EMC has provided electric service to Free Chapel since the construction of the new church.

On August 7, 2002, Georgia Power filed a petition with the Commission claiming that Jackson EMC had violated the Territorial Act, because Free Chapel previously had chosen Georgia Power as its electric service provider. Georgia Power sought to be named the lawful supplier of electricity to Free Chapel. Jackson EMC disputed Georgia Power's claims that it had a contract with Free Chapel to supply its electric services. Despite the language in the Request Form indicating its right to choose a provider, Jackson EMC alleged that Georgia Power told Hartness that Free Chapel did not qualify as a large load consumer and therefore was obligated to select Georgia Power as its electric service provider. Jackson EMC claimed that Kernen signed the Request Form based on such alleged misrepresentations.

Following an evidentiary hearing, the Hearing Officer issued an Initial Decision granting Georgia Power's petition. The Hearing Officer found that while a contract was "not required under the Territorial Act to evidence a choice of electric suppliers," the combination of the Request Form and Georgia Power's publicly-

available Rates, Rules, and Regulations provided all the "essential terms of a contract." The Hearing Officer also found that "Free Chapel's choice is evidenced — even under contractual standards — by other numerous exchanges between Free Chapel and Georgia Power." Finally, the Hearing Officer found that Jackson EMC's allegations of misrepresentation by Georgia Power were "untenable." Holding that Georgia Power was the lawful supplier of electric service to Free Chapel, the Hearing Officer ordered Jackson EMC to cease providing such services to Free Chapel in violation of the Territorial Act.

Jackson EMC applied for Commission review of the Hearing Officer's Initial Decision. The Commission affirmed and adopted the same, finding that (i) Jackson EMC's allegations of misrepresentation were "not credible," (ii) that a "formal contract" was not necessary to designate an electric service provider, and (iii) the choice of an electric service provider could be made by the Request Form. Jackson EMC filed a Petition for Judicial Review, and the superior court affirmed the Commission's decision. This appeal followed.

1. Jackson EMC argues that any agreement between Free Chapel and Georgia Power is void because Georgia Power misrepresented that Free Chapel would not qualify as a large load consumer and was therefore obligated to choose Georgia Power as its electric service provider. We disagree.

Here, there is sufficient evidence to support the Commission's finding that these allegations were "not credible." See *Peterson*, supra, 284 Ga. App. at 427 (1) (Commission's findings must be affirmed if there is any evidence to support them). The Request Form itself placed Free Chapel on notice of its right to choose a provider, stating, "I understand that according to the provisions of the Georgia Territorial Electric Service Act, there may be a choice of electric suppliers to provide electric service to [Free Chapel]. I choose to take electric service from Georgia Power Company instead of service from any other electric supplier." This language indicated that Free Chapel had a right to choose its electric supplier but, by executing the Request Form, would bind itself to receive service from Georgia Power. If Free Chapel was obligated under the Territorial Act to receive service from Georgia Power, there would have been no need for Georgia Power to request that Free Chapel execute the Request Form and forego its right to choose another electric service provider. The language in the Request Form refutes Free Chapel's contention that it was misled, and we therefore reject this enumeration of error.

2. Jackson EMC next argues that the Commission erred in concluding that a choice of electric service provider under the

Territorial Act does not require a showing of a contract between the parties.[3] We agree.

In *North Ga. Elec. Membership Corp. v. City of Dalton*, 197 Ga. App. 386 (398 SE2d 209) (1990), the North Georgia Electric Membership Corporation ("NGEMC") filed a petition before the Commission to enjoin Dow Chemical Company ("Dow") from obtaining electrical power from another supplier, appellee City of Dalton. NGEMC argued that Dow previously "did choose NGEMC as its electrical power supplier," as evidenced by the parties' written correspondence. (Emphasis omitted.) Id. In determining whether Dow had chosen NGEMC as its supplier, this Court held that the case "must be viewed from the legality of the contract principles involved." Id. at 390. Applying these principles, this Court found that "a contract did exist between Dow and NGEMC for the supply of power," based upon the parties' written correspondence, which reflected the terms of their agreement. Id. at 392 (on motion for rehearing).

In light of *Dalton*, we hold that the Commission erred to the extent that its Final Decision may be construed as concluding that a customer's choice of supplier need not be evidenced by a binding agreement. We find that *Dalton* rests on sound logic and that it would be unfair if large load customers could be bound to receive service from an allegedly chosen supplier absent a binding agreement reached through mutual assent and meeting the other requirements for contract formation under Georgia law.

However, the Commission's error has no effect on the outcome of this case, because as explained in Division 4, infra, the execution of the Request Form resulted in a binding contract between Free Chapel and Georgia Power. See *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208, 210 (1) (367 SE2d 43) (1988) (trial court's ruling should be affirmed if right for any reason).

3. Jackson EMC contends that the Commission's decision defeats legislative intent and deprives large load consumers of their statutory rights under OCGA § 46-3-8 (a). We disagree.

The large load exception found in the Territorial Act, as an exception to the general rule of competitive restriction, must be narrowly construed. *City of Norcross v. Ga. Power Co.*, 197 Ga. App. 891, 892-893 (1) (399 SE2d 725) (1990). Moreover, as discussed in Division 4, infra, Free Chapel in fact exercised its right to choose its electric service provider pursuant to the Territorial Act. Accordingly,

---

[3] The Commission's Final Decision stated that a customer's choice of a supplier "does not require a formal contract." We interpret this statement as expressing agreement with the Hearing Officer's conclusion in the Initial Decision that a large load customer's choice need not be evidenced by any contract (formal or otherwise).

the purposes of OCGA § 46-3-8 (a) were served, and Jackson EMC's enumeration of error fails.

4. We further disagree with Jackson EMC's assertion that the Commission erred in finding that the Request Form met the essential requirements of a contract.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. "Binding contracts may consist of several writings — provided there is no conflict between the various parts. [Cits.]" *Cassville-White Assoc. v. Bartow Assoc.*, 150 Ga. App. 561, 564 (3) (a) (258 SE2d 175) (1979). Here, Jackson EMC argues that Free Chapel did not assent to the terms of the contract.

> The legal test for mutuality of assent to contract or meeting of the minds requires the application of an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent.

(Citation, punctuation and emphasis omitted.) *City of Dalton*, supra, 197 Ga. App. at 387. Applying this test, we must conclude that Free Chapel intended to be bound.

In *Jackson Elec. Membership Corp. v. Ga. Power Co.*, 257 Ga. 772 (364 SE2d 556) (1988) (*"Marriott"*), Jackson EMC sued Marriott Corporation for breach of contract and sought to enjoin Georgia Power from providing electric service to Marriott based upon a written proposal Jackson EMC sent to Marriott and a "Request for Service" form subsequently executed by Marriott. Id. In reversing the trial court's grant of summary judgment for Marriott, the Supreme Court of Georgia held: "Clearly, the parties intended to enter an agreement: they expressed their mutual intentions to be bound, and a contract was formed." Id. at 773 (1).

Here, Georgia Power submitted to Free Chapel a "Request for Electric Service" form. The Request Form is similar to the "Request for Service" form Jackson EMC used in *Marriott* to "signify a mutual agreement." (Punctuation omitted.) *Marriott*, supra, 257 Ga. at 772. We find that the Request Form, together with Georgia Power's publicly-available Rates, Rules, and Regulations, are sufficiently definite to comprise a contract. In addition, as the Hearing Officer found, the existence of a contract between Free Chapel and Georgia

Power is further evidenced by other documents and correspondence between the parties, including the Amendment to the land sale agreement in which Free Chapel agreed "to use Georgia Power in all future uses on said property at rates competitive with other electrical suppliers in the area." As in *Marriott*, the exchange of documents and correspondence between the parties, including the Request Form, demonstrates that the parties intended to be bound and that a contract was formed.

5. Free Chapel asserts that the Commission erred in finding detrimental reliance by Georgia Power. Given our finding in Division 4, supra, that Georgia Power and Free Chapel entered into a binding agreement, we need not address this argument.

6. During the administrative proceedings below, a number of electric suppliers were asked to produce documents that would "confirm or document a customer's choice of [you] as its electric supplier in the last three competitive choice jobs won by [you]." In response, all of these electric suppliers produced forms similar to the Request Form used by Georgia Power. Jackson argues that, by considering this evidence, the Commission erred by giving weight to the practices of nonparties. We disagree.

In contested cases under the Administrative Procedure Act, "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded." OCGA § 50-13-15 (1). We will affirm an administrative agency's decision regarding the competency or relevancy of evidence absent a manifest abuse of discretion. *Ga. Power Co. v. Ga. Public Svc. Comm.*, 196 Ga. App. 572, 576 (2) (396 SE2d 562) (1990). No abuse of discretion occurred here.

Other suppliers' Request Forms were relevant and admissible, as they reflected a standard industry practice — i.e., an accepted mechanism by which customers and electric service providers express agreement concerning a customer's choice of a provider under OCGA § 46-3-8 (a). To the extent other suppliers and customers utilize forms similar to Georgia Power's Request Form, evidence of industry practice tends to support Georgia Power's claim that Free Chapel chose Georgia Power as its electrical service provider by executing the Request Form. *Popham v. Popham*, 278 Ga. 852, 853 (1) (607 SE2d 575) (2005) ("Evidence is relevant if it logically tends to prove or disprove a material fact at issue in a case.") (footnote omitted). Further, the Commission was vested with wide discretion to determine how much weight to give this evidence of industry practice. OCGA § 50-13-19 (h).

For the reasons set forth above, we affirm the order of the trial court upholding the Commission's ruling that Free Chapel had chosen Georgia Power as its electric service provider.

*Judgment affirmed. Andrews and Ellington, JJ., concur.*

DECIDED OCTOBER 27, 2008 —

*Sutherland, Jennifer N. Ide, James A. Orr*, for appellant.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, Daniel S. Walsh, Assistant Attorney General, Troutman Sanders, Robert P. Edwards, Jr., Heather Shirley Smith, Kelli Jo Laker Leaf*, for appellee.