STATE OF MAINE                                    SUPERIOR COURT
                                                   CIVIL ACTION
YORK, ss.                                          DOCKET NO. CV-09-361
                                                   GAB - YOK - 7/26 2010


TOWN AND COUNTRY
LEASING, LLC.,

                 Plaintiff


        v.                               JUDGMENT



MARCEL W. DUBOIS, d/b/a
DUBOIS LIVESTOCK,

                 Defendant


        Plaintiff Town and Country Leasing, LLC, filed this action to obtain a deficiency

judgment against defendant Marcel W. Dubois, d/b/a Dubois Livestock. Mr. Dubois

denies that there was an agreement and has filed a counterclaim. The plaintiff now

moves to dismiss the counterclaims and requests summary judgment on its deficiency

action.

## BACKGROUND

        The plaintiff alleges that defendant Marcel W. Dubois obtained an $85,000 loan

from American Bank Leasing Corp. ("American") in 2007. Mr. Dubois used the

principal to purchase a piece of equipment for his business, and gave American a

security interest in that equipment. Shortly after making the loan, American assigned

its interest to plaintiff Town and Country Leasing, LLC ("T&C").

        On February 1, 2009, Mr. Dubois defaulted on the loan by failing to make the

installment payment due. He has not made any payments since that date. In response

to his continuing default, T&C declared the unpaid balance and other indebtedness to

be immediately due and payable pursuant to the acceleration clause in the loan agreement. T&C then repossessed and sold the equipment resulting in net proceeds to T&C of $12,150.00, leaving an alleged deficiency of $64,510.96. Mr. Dubois denies these allegations.

T&C filed its complaint on December 9, 2009, and served Mr. Dubois on December 15, 2009. Mr. Dubois brought a motion to dismiss that was denied on May 5, 2010, and filed his answer and counterclaim on May 17, 2010. The plaintiff filed its motion for summary judgment on April 27, 2010, and its motion to dismiss on June 8, 2010.

## DISCUSSION

Mr. Dubois contends that this court lacks jurisdiction because of a choice of law and forum selection clause in the contract at the heart of this suit. The contract states that it "shall be governed by the laws of the State of Georgia," and "that all actions or proceedings arising ... in connection with, out of, related to this agreement [sic] or any other document shall be litigated, *at creditor's sole discretion and election*, in courts situated within the State of Georgia ...." (Pl.'s Compl. Exh. A, ¶ 18 (emphasis added).) The plain language of this provision gives the creditor, here T&C, the right to compel any litigation arising from the contract to take place in Georgia. It does not, however, prevent such litigation from being brought elsewhere. If it did, the grant of discretion to the creditor would be meaningless. T&C is free to waive its right to compel litigation to occur in Georgia, and it has done so by bringing this action in Maine.

As the contract does not impede T&C's ability to litigate the contract in the forum of its choosing, the normal rules of jurisdiction apply. The Superior Court is the statewide court of general jurisdiction and is able to exercise subject matter jurisdiction over this action to recover a deficiency on a lending contract. *See Windham Land Trust v.*

2

*Jeffords*, 2009 ME 29, ¶ 21, 967 A.2d 690, 697; *Powers v. Planned Parenthood*, 677 A.2d 534, 538 (Me. 1996). The court has personal jurisdiction over the parties because Mr. Dubois is a resident of Arundel, Maine, and plaintiff T&C has voluntarily availed itself of this forum. *Margani v. Sanders*, 453 A.2d 501, 503 (Me. 1982).

Mr. Dubois bases his defense and counterclaims on what is essentially a challenge to the validity, trustworthiness, and admissibility of the contract documents in the record. When he initially contracted with American, it appears that he signed the documents first and then sent them to American's place of business to be countersigned. His premise is that American altered the contract documents after he signed them, rendering their agreement null. It would follow that there was never a contract and that the signed documents attached to the plaintiff's complaint are fraudulent, unreliable, and inadmissible hearsay. To make his case, Mr. Dubois has attached to his answer copies of the allegedly unaltered documents signed only by him.

The first relevant document is attached to the plaintiff's complaint and is titled "Master Equipment Financing Agreement" numbered 00597. (Pl.'s Compl. Exh. A.) The Master Agreement's stated purpose is to provide uniform terms to govern future loans and advances. (Pl.'s Compl. Exh. A ¶ 1.) Each future loan or advance would be represented by a separately executed Schedule containing the specific financial terms of the lending arrangement. (Pl.'s Compl. Exh. A ¶ 1.) The Schedules would also incorporate the Master Agreement's terms by reference. (Pl.'s Compl. Exh. A ¶ 1.)

The uniform terms of the Master Agreement call for payments on each Schedule to be made on the first day of the month following a "Commencement Date," and gives the creditor a security interest in any equipment the Schedule lists. (Pl.'s Compl. Exh. A ¶¶ 3–4.) The Master Agreement gives the creditor the right to freely assign its interests without notice, and in the event of a default gives the creditor the right to

3

declare the entire debt due immediately at its discounted present value, retake possession of and sell the secured equipment, and recover the costs and attorney's fees of collection. (Pl.'s Compl. Exh. A ¶¶ 12–13.) Amounts more than thirty days overdue incur interest of 14% per annum. (Pl.'s Compl. Exh. A ¶ 14.)

The Master Agreement contains the choice of law and venue provision favoring Georgia as mentioned above, and specifies that it "shall not become effective until accepted by [c]reditor at its above-described office ...." (Pl.'s Compl. Exh. ¶¶ 18, 21.) Mr. Dubois, d/b/a/ Dubois Livestock, is identified as the debtor. He signed the Master Agreement on April 16, 2007, initialing each page as he did so. American Bank Leasing Corp. is identified as the creditor, and its representative signed and accepted the agreement on April 19, 2007.

Approximately three months after entering into the Master Agreement, Mr. Dubois and American executed Schedule number 104164. (Pl.'s Compl. Exh. A.) The copy of the Schedule attached to Mr. Dubois's answer is signed only by him and is otherwise unmarked. (Def.'s Ans. Exh. 1.) It references the Master Agreement by number, 00597, and expressly incorporates the Master Agreement's terms. (Def.'s Ans. Exh. 1.) It also states that American would advance a sum of $85,000 to Mr. Dubois, d/b/a Dubois Livestock, to allow him to purchase one "Used 1996 Finlay 393 Hydrascreen Portable Screen Plant, S/N: H430282." (Def.'s Ans. Exh. 1.) In return, Mr. Dubois would make sixty monthly payments of $1,982.69, with $4,390.38 due on signing. (Def.'s Ans. Exh. 1.) The $4,390.38 payment represented the first and last months' payments plus a $425.00 document and origination fee. (Def.'s Ans. Exh. 1.) The commencement date was left blank, as was the date of Master Agreement number 00597's execution. (Def.'s Ans. Exh. 1.)

4

Mr. Dubois signed Schedule 104164 on July 18, 2007. (Def.s Ans. Exh. 1.) American's representative signed the Schedule on July 27, 2007. (Pl.'s Compl. Exh. A.) American's copy of the Schedule identifies the commencement date as August 1, 2007, in handwriting. (Pl.'s Compl. Exh. A.) The Master Agreement's date is also handwritten as April 16, 2007, the date it was signed by Mr. Dubois. (Pl.'s Compl. Exh. A.)

The Schedule was accompanied by another document titled "Notice of Assignment and Highlights of Contract." Mr. Dubois's copy of this Assignment states that American had assigned its rights under the contract to Town & Country Leasing, LLC, and that all payments should be made directly to T&C. (Def.'s Ans. Exh. 2.) The Assignment identifies the contract as being for the purchase of "One (1) Used 1996 Finlay 393 Hydrascreen Portable Sreen Plant, S/N: H430282," and requiring Mr. Dubois to make sixty monthly payments of $1,982.69. (Def.'s Ans. Exh. 2.) Recognizing the payment made on signing, the Assignment indicated that only fifty-eight payments were due T&C. (Def.'s Ans. Exh. 2.) Mr. Dubois signed the Assignment on the same day he signed the Schedule, July 18, 2007. (Def.'s Ans. Exhs. 1, 2.)

When Mr. Dubois signed the Assignment, a line to identify the contract by number and date was left blank. (Def.'s Ans. Exh. 2.) The line indicating when the first payment was due T&C was also left blank, meaning that payment would be due thirty days from funding by T&C. (Def.'s Ans. Exh. 2.) American's representative signed the Assignment on July 27, 2007, the same day he signed the Schedule. (Pl.'s Compl. Exh. B.) The date of the first payment due T&C was handwritten as September 1, 2007, and the specific contract identification number "Master EFA Schedule #104164 dated" July 18, 2007, was typewritten at the top. (Pl.'s Compl. Exh. B.)

The defendant argues that the alleged contract was not valid because American signed the documents after Mr. Dubois and "altered, changed, and adulterated" them.

5

(Def.'s Countercl. ¶ 1.) Before the court can evaluate the legal merit of Mr. Dubois's claims, the court must determine which law to apply. Maine courts will honor "a contractual choice of law provision 'unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) the application of the law of the chosen state would'" contravene Maine public policy. *Schroeder v. Rynel, Ltd.*, 1998 ME 259, ¶ 8, 720 A.2d 1164, 1166 (quoting Restatement (Second) Conflicts of Laws § 187(2) (1971)).

The pleadings show that American's place of business was located in Georgia when it contracted with Mr. Dubois, providing one of the contracting parties a substantial relationship with that state. Furthermore, Georgia's law of contracts appears to be substantially similar to Maine's, and its application will not violate any strong public policy. Finally, while neither party to this litigation has a current connection to Georgia, they have not objected to the application of Georgia law. The court will apply Georgia law to determine whether the pleadings show a prima facie existence of a valid contract.

A valid contract requires "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." *Peace v. Dominy Holdings*, 554 S.E.2d 314, 315 (Ga. Ct. App. 2001) (quoting O.C.G.A. § 13-3-1) (quotations omitted). Assent must be mutual as to all essential terms, and these terms must be certain. *Id.* "The legal test for mutuality of assent" is an objective one that looks at the "meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestation of assent ...." *Jackson Elec. Mbrshp. Corp. v. Ga. PSC*, 668 S.E.2d 867, 872 (Ga. 2000) (quoting *N. Ga. Elec. Mbrshp. Corp. v. Dalton*, 398 S.E.2d 209, 213 (Ga. Ct. App. 1990)) (quotations omitted).

"'Binding contracts may consist of several writings" so long as they are consistent. *Id.* (quoting *Cassville-White Assocs., Ltd. v. Bartow Assocs., Inc.*, 258 S.E.2d 175, 178 (Ga. Ct. App. 1979)) (quotations omitted). An intentional, unilateral alteration made without fraudulent intent or made to immaterial matter within a written contract will not void a contract if the original material terms can be ascertained and enforced. O.C.G.A. § 13-4-1 (2010).

There is no question here that the parties are capable of entering into a contract, the contract was supported by consideration, and the contract pertained to appropriate subject matter. Mr. Dubois's argument hinges on assent, i.e. that after he signed the documents and offered them for acceptance, American unilaterally altered the proposed terms. This argument is belied by Mr. Dubois's own exhibits. To begin, they are admissible admissions because Mr. Dubois both signed them and attached them to his answer. The Master Agreement attached to the plaintiff's complaint is also signed.

The Master Agreement and the unaltered Schedule contain all of the essential terms required for an enforceable lending agreement. The Schedule clearly refers to the Master Agreement by name and number, and incorporates its terms. Together, the documents identify the parties and the specific piece of equipment subject to American's security interest. Their obligations are plainly spelled out: American agreed to provide Mr. Dubois with $85,000.00 for the purchase of the specified equipment immediately; and in exchange Mr. Dubois agreed to pay American $118,961.40 over the course of sixty months. While the Schedule did not specify a commencement date, it did specify that payments would be made each month, with the first month's payment being tendered on signing. The contract to make monthly payments that is executed in July is not fatally indefinite because it fails to specify that payments will begin in August.

7

After Mr. Dubois signed the Schedule and offered it to American, but presumably before American accepted, American filled in the commencement date and the date Mr. Dubois signed the Master Agreement. American then signed the Schedule, signifying its acceptance. These "alterations" did not vary any of the material terms of the either the Master Agreement or the Schedule. Rather, they merely add additional identifying information and affirm that repayments are to be made monthly. The parties, subject matter, consideration, obligations, and methods of performance remained wholly unchanged. Furthermore, Mr. Dubois has not pleaded any facts that would indicate the changes were made to defraud him. Based solely on the pleadings, the court finds that a facially valid contract existed between Mr. Dubois and American.[1]

Like the Master Agreement and the Schedule, the Assignment is valid on its face. An effective assignment only requires evidence of an owner's intention to transfer its property to an identifiable assignee. *Park Ave. Bank v. Bassford*, 205 S.E.2d 861, 862–63 (Ga. 1974) (citing *Citizens & Southern Nat'l Bank v. Capital Constr. Co.*, 144 S.E. 2d 465, 466 (Ga. App. 1965)); *Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 11, 732 A.2d 264, 267; Restatement (Second) of Contracts § 324 (1981). American had the right to freely assign its interest in the contract without Mr. Dubois's notice or approval. The Assignment plainly shows that American assigned its interest in the contract to T&C when it signed the document on July 27, 2007. The fact that it executed the assignment contemporaneously with the contract should not defeat the validity of either.

To summarize thus far, an examination of the uncontested facts in the pleadings shows that Mr. Dubois and American executed a facially valid contract, and that American transferred its interest in that contract to T&C. With this background, the

---

[1] Mr. Dubois could also have ratified any alterations by starting to perform the contract, but pleadings themselves do not indisputably show that he acted on the agreement. Restatement (Second) Contracts § 19 (1981).

court will address T&C's motion to dismiss the defendant's counterclaims. Mr. Dubois brings four Counts alleging intentional misrepresentation, negligent misrepresentation, breach of contract and breach of the duty of good faith and fair dealing, and violations of the state and federal Fair Debt Collection Practices Acts.

"A motion to dismiss tests the legal sufficiency of the complaint." *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)). The Court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *McAfee*, 637 A.2d at 465). "For purposes of a 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *McAfee*, 637 A.2d at 465. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that [s]he might prove in support of [her] claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1245–46.

Under Maine's rule of notice pleading a party does not need to allege specific facts to survive a 12(b)(6) motion to dismiss unless the allegations are of fraud or mistake. M.R. Civ. P. 8(a), 9(b) (2009). However, the allegations must be sufficient to give the defendant notice of the basis of the claims so that the defendant can prepare an adequate defense. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[2] "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.*

Count I alleges intentional misrepresentation. To succeed on this claim, Mr. Dubois must prove by clear and convincing evidence:

> (1) that [T&C] made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or

---

[2] Rule 8(a) is practically identical to the comparable federal rule and the court may look to interpretations of the analogous rule for guidance. *Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676, 680.

> false (4) for the purpose of inducing [him] to act in reliance upon it, and (5) [he] justifiably relied upon the representation as true and acted upon it to [his] damage.

*Me. Eye Care Assocs. P.A. v. Gorman*, 2006 ME 15, ¶ 19, 890 A.2d 707, 711. This tort is a species of fraud and must be plead with particularity. *See id.* (referring to tort as "fraudulent inducement"); *Mariello v. Giguere*, 667 A.2d 588, 590 (Me. 1995) (same).

The defendant's argument is that there was never a contract because American signed the contract documents and added immaterial clarifications after he signed them himself. The counterclaim complaint then recites that this constitutes concealment and is evidence of malice. These allegations clearly fail to state a claim for intentional misrepresentation because they do not allege that T&C made any false representations to Mr. Dubois. There are also no alleged facts showing intent or reliance.

At most, these allegations could show that T&C is lying to the court, which could give rise to a claim of malicious prosecution. However, an action for malicious prosecution cannot be brought until the wrongful proceedings have "terminated in favor of the accused." Restatement (Second) of Torts § 653; *see Price v. Patterson*, 606 A.2d 783, 785 (Me. 1992) (citing the Restatement). Furthermore, the pleadings show that there was, on its face, a valid contract between American and the defendant, which was effectively assigned to T&C. The plaintiff's motion to dismiss counterclaim Count I will be granted.

> Count II asserts a claim for negligent representation, the standard for which is:
>
> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

10

*Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 13, 832 A.2d 771, 774 (quoting Restatement (Second) of Torts § 552(a)(1)) (alterations omitted).

The defendant bases this claim on the same arguments he advanced for the intentional misrepresentation claim, and it must likewise fail. Mr. Dubois's counterclaim does not allege that T&C supplied him with any false information that he relied on. Assuming the existence of a duty, he has not alleged anything that could be construed as a breach or causation. Put another way, the pleading does not give T&C notice of what it must defend. Count II will be dismissed.

Count III claims that T&C breached the parties' contract by bringing suit in Maine. As discussed above, the choice of venue provision does not bar the creditor, T&C, from filing this action in Maine. This count also alleges a breach of the duty of good faith and fair dealing. The defendant has not indicated how T&C has deprived him of the benefit of the bargain or alleged any other behavior that could be construed as a breach of duty. Count III will be dismissed.

Count IV asserts claims under the federal Fair Debt Collection Practices Acts, the Maine Fair Debt Collection Practices Act, and any similar law in Georgia. In his response to the plaintiff's motion to dismiss, Mr. Dubois identifies Georgia's Industrial Loans Act. Mr. Dubois also contends that T&C has violated the RICO statutes. Even if both Maine and Georgia law were to apply under the circumstances, none of these claims have merit.

The federal Fair Debt Collection Practices Act does not apply to debts incurred for business purposes or to assignees that receive the debt before it goes into default. 15 U.S.C. § 1692a(5)–(6) (2006); *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). Maine's Fair Debt Collection Practices Act is identical to the federal act in these respects. 32 M.R.S. §§ 11002(5)–(6),

11

11003 (2009). The pleadings show that Mr. Dubois incurred his debt to buy equipment for his business, and that American assigned the debt to T&C more than a year before the alleged default. Furthermore, Mr. Dubois has not alleged any actions by T&C that would constitute prohibited harassment, abuse, or fraud under the Acts. 15 U.S.C. §§ 1692d–1692f (2006); 32 M.R.S. § 11013 (2009).

The Georgia statute cited by the defendant only applies to lenders who make loans of $3,000 or less. O.C.G.A. § 7-3-3(4). The loan in this case greatly exceeds this amount, and the statute does not apply. Georgia's RICO statute applies to entities that engage in a pattern of racketeering, which in turn requires a showing of multiple incidents of criminal activity. O.C.G.A. §§ 16-14-3 to 16-14-4. Mr. Dubois has not alleged a pattern of criminal behavior. Mr. Dubois has failed to state a claim under this or any other Count, and the plaintiff's motion to dismiss the defendant's counterclaims will be granted in its entirety.

The plaintiff's motion for summary judgment asserts that Mr. Dubois and American had a valid contract as described above at *supra* pp. 3–6. (Supp. S.M.F. ¶¶ 1–2, 4–8.) American then assigned all of its rights and interest in the contract to T&C. (Supp. S.M.F. ¶ 3.) While the plaintiff states that this assignment occurred on July 18, 2007, the actual Assignment document shows that American did not execute the transfer until July 27, 2007. (*Compare* Supp. S.M.F. ¶ 3 *with* Pl.'s Compl. Exh. B.) The document speaks for itself and proves the material fact, i.e. that American effectively transferred its interest to T&C.

Mr. Dubois failed to make the payment due February 1, 2009 and all subsequent payments. (Supp. S.M.F. ¶¶ 9, 14.) T&C accelerated the debt on June 17, 2009, as a result of the defendant's continuing default. (Supp. S.M.F. ¶ 10.) It also repossessed and sold the secured equipment, resulting in net proceeds of $12,150.00. (Supp. S.M.F. ¶ 11.)

12

When the motion for summary judgment was filed, T&C calculated the total deficiency due to be $64,510.96. (Supp. S.M.F. ¶ 12.) This calculation included an accelerated amount of $75,796.12, plus late fees and interest totaling $864.84, reduced by the $12,150.00 netted in the equipment sale. (Supp. S.M.F. ¶ 12.) T&C made a demand for the deficiency through a letter to Mr. Dubois dated September 15, 2009, but Mr. Dubois did not respond. (Supp. S.M.F. ¶¶ 13–14.) T&C then filed this action, and claims to have incurred reasonable attorney's fees and costs totaling $6,788.42 as of March 5, 2010. (Supp. S.M.F. ¶ 15.)

Mr. Dubois has not offered any evidence to rebut the plaintiff's asserted facts. Instead, he attacks the admissibility of an affidavit supporting most of the plaintiff's material allegations. The affidavit is that of Ralph Martinez, T&C's Senior Vice President. This affidavit is signed, sworn, and notarized. In it, Mr. Martinez swears that the facts set forth "are derived from [his] personal knowledge of ... records, which were kept in the ordinary course of business by employees whose duties included regularly keeping such records, and which were made at or near the time of the act or transaction by, or from information transmitted by, a person with personal knowledge of the facts set forth ...." (Martinez Aff. preamble.) Such records satisfy the hearsay exception in Maine Rule of Evidence 803(6), and there is no reason to doubt Mr. Martinez's veracity. The affidavit meets the requirements of Rule 56(e). Mr. Dubois has not controverted any of T&C's statements, so they are deemed admitted. M.R. Civ. P. 56(h)(4) (2009).

Mr. Dubois does submit his own statement of facts and affidavit in which he asserts that there was never a contract because the signed documents were legally void. These are conclusions of law rather than facts, and the uncontroverted evidence in the record proves them to be incorrect. Tellingly, Mr. Dubois does not state that there was never a loan; that he never purchased the equipment identified in the documents; that

13

he did not perform on the contract between July 2007 and January 2009; or that he did not default on the debt in February 2009.

Plaintiff T&C has established that Mr. Dubois entered into a contract with American, that American assigned its rights to T&C, and that Mr. Dubois defaulted on his obligations. Mr. Dubois has not offered any competent evidence or legal argument to demonstrate that the contract was invalid or unenforceable for reasons not evident on its face. Summary judgment is appropriate, and the plaintiff's motion will be granted.

## CONCLUSION

1. The plaintiff's motion to dismiss the defendant's counterclaims is Granted.

2. Plaintiff's Motion for Summary Judgment on its complaint is Granted. Judgment will be entered for Plaintiff in the sum of $71,299.33, along with costs, interest and attorney's fee, which will be determined upon submission of an affidavit from counsel.

Clerk may incorporate this judgment in the docket by reference.

Dated: July 24, 2010

G. Arthur Brennan
Justice, Superior Court

ATTORNEY FOR PLAINTIFF:
STEPHANIE WILLIAMS, ESQ.
PERKINS THOMPSON
PO BOX 426
PORTLAND ME   04112


ATTORNEY FOR DEFENDANT:
AMY L. FAIRFIELD, ESQ.
FAIRFIELD & ASSOCIATES PA
PO BOX 635
KENNEBUNK ME   04043

14