A07A2333, A07A2334. In re ESTATE OF MIRAGLIA (two cases).
(658 SE2d 777)

Adams, Judge.

Appellant Robert Herndon was appointed guardian of the property[1] of Edward Miraglia, Jr. on March 31, 1998. He served in that capacity for almost a year, until Miraglia died on March 18, 1999. Herndon turned over Miraglia's assets to the co-executors of the estate,[2] but retained $376,398 as compensation for his service as guardian pursuant to then applicable OCGA § 29-2-42.[3] The co-executors subsequently filed a Motion for Repayment of Excess Guardian Fees on the ground that Herndon erroneously calculated his fees under that Code section by taking 2.5 percent of stocks, bonds and real property in addition to the 2.5 percent of "sums of money" allowed under that section. The probate court denied both parties' motions for summary judgment and after a trial ordered Herndon to repay $304,835.32 to the administrator of the estate, holding that real estate,[4] stocks and bonds are not "sums of money" as that term is used in OCGA § 29-2-42 (a); Herndon appeals that ruling in Case No. A07A2333. The probate court denied the administrator's motion for pre-judgment interest on the amount owed and the administrator appeals that ruling in Case No. A07A2334.

*Case No. A07A2333*

1. The language at issue in OCGA § 29-2-42 provided in relevant part as follows:

> As compensation for services, a guardian shall have a commission of 2 1/2 percent on all sums of money received on account of the estate, except on money loaned by and repaid to the guardian, and a like commission on all sums paid out by the guardian. Guardians may be allowed an additional annual commission of .5 percent of the market value . . . of the property held in their estates. The commissions are part of the expense of administering the ward's estate and may be charged against the corpus of the estate as well as the income.

---

[1] Title 29 has since been substantially revised and the term "conservator" has replaced the term "guardian of the property." A "guardian" now refers to "guardian of the person." OCGA §§ 29-1-1 (2), (7); 29-5-1; 29-5-125.

[2] The originally appointed co-executors have since died and Scott W. Spivey was substituted as the administrator De Bonis Non Cum Testamento Annexo of the estate.

[3] Now codified at OCGA § 29-5-50.

[4] Herndon conceded below that he should not have taken a 2.5 percent commission on the value of the real estate.

Ga. L. 1996, p. 516, § 6.[5]

Although there are no Georgia cases interpreting the phrase "all sums of money," as used in this Code section, in *Walton v. Gairdner*, 111 Ga. 343 (36 SE 666) (1900), the Supreme Court of Georgia interpreted a statute governing compensation for executors that used nearly identical language. That statute provided that executors "shall have a commission of two and one half per cent on all sums of money received by him on account of the estate . . . and a like commission on all sums paid out by him. . . ." (Punctuation omitted.) Id. at 344 (1). After noting that the statute was in derogation of the common law and therefore must be strictly construed, the Court found that "stocks or bonds" are in no sense "sums of money received . . . on account of the estate." (Punctuation omitted.) Id. at 345 (1).

Herndon argues, however, that *In re Estate of Donald*, 222 Ga. App. 355 (474 SE2d 251) (1996) requires us to strictly construe *Walton* and limit our Supreme Court's holding in that case to statutes involving executors. But the issue in *Donald* was whether a statute which on its face applied only to a guardian to guardian transfer of assets should also be applied to a transfer of assets from a guardian to an executor. We do not read *Donald* to mean that we should not look to previous interpretations of identical statutory language to discern the meaning of words or that statutes that use identical statutory language should not be interpreted in a like manner.

Moreover, we would reach the same result even without *Walton v. Gairdner* to guide us. "In all interpretations of statutes, the ordinary signification shall be applied to all words, except for words of art or words connected with a particular trade or subject matter. . . ." OCGA § 1-3-1 (b). The American Heritage Dictionary (4th ed. 2000) defines money as follows: "A medium that can be exchanged for goods and services and is used as a measure of their values on the market, including among its forms a commodity such as gold, an officially issued coin or note, or a deposit in a checking account or other readily liquifiable account." The second definition listed is "[t]he official currency, coins, and negotiable paper notes issued by a government." Black's Law Dictionary (8th ed. 2004) defines money as "[t]he medium of exchange authorized or adopted by a government as

---

[5] The current version of that statute, now denominated OCGA § 29-5-50 (a), is substantially the same and provides:

   . . . [A] conservator shall be entitled to compensation for services rendered equal to:
   (1) Two and one-half percent commission on all sums of money received by the conservator on account of the estate, except on money loaned by and repaid to the conservator, and 2 1/2 percent commission on all sums paid out by the conservator;
   (2) An additional commission equal to one-half of 1 percent computed on the market value of the estate as of the last day of the reporting period. . . .

part of its currency."[6] And our General Assembly, in a wholly different context, has defined money as a "medium of exchange authorized or adopted by a domestic or foreign government. . . ." OCGA § 11-1-201 (24). Clearly a security is not a "medium of exchange," within the meaning of these definitions and Herndon does not cite us to anything which holds otherwise.

Herndon also makes the additional argument that because Miraglia's stocks had been converted to "street name,"[7] they were easily converted to and equivalent to cash, and for this reason should be considered "sums of money" under the statute. But this argument simply shows that stocks are not equivalent to money, since the stocks first had to be converted to "street name" to make them easier to sell and then had to be sold to be converted to cash. And holding the stocks in street name did nothing to prevent the stock from fluctuating up and down in value. Moreover, we do not think the legislature intended for the statute to be applied in different ways to stocks and bonds depending upon the manner in which they are held. Clearly such a construction would render the statute unwieldy if not unworkable and would cause property of essentially the same kind to be treated differently depending on how the securities owner chose to register them.

Based on the foregoing, we conclude that the probate court did not err by finding that stocks and bonds are not "sums of money" within the meaning of OCGA § 29-2-42 (a) (now OCGA § 29-5-50 (a)) and consequently disallowing Herndon to take a 2.5 percent commission on the stocks and bonds which were part of Miraglia's estate.

### Case No. A07A2334

2. In its cross-appeal, the administrator contends that the probate court erred by denying his claim for prejudgment interest under OCGA § 7-4-15. We agree.

OCGA § 7-4-15 provides: "[a]ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of demand." The transcript from the proceedings below shows, and

---

[6] Although the latest edition of Black's provides a definition of money that includes "assets that can be easily converted to cash," the example listed is demand deposits, i.e., checking and like accounts.

[7] Street name is the name under which securities are held by a broker on behalf of a client and are negotiable in the name of a Wall Street firm. The general purpose of holding securities in "street name" is for ease in conducting business since it allows the customer to convert the stocks and bonds into cash without additional paperwork.

Herndon acknowledges on appeal, that he stipulated to the amount he received as commissions based on stocks and bonds under OCGA § 29-2-42 (a) and thus the amount that he ultimately had to repay to the administrator. Thus, we agree with the administrator that the only issue below was whether Herndon was entitled to the commissions under OCGA § 29-2-42; the amount was not in issue.

Herndon posits that because there was a bona fide dispute concerning the amount of commissions he was authorized to take under OCGA § 29-2-42 (a), the amount remained unliquidated until the probate court decided that issue. But "[t]he fact that [Herndon] disputed liability at trial did not convert the claim into a claim for an uncertain and, therefore, unliquidated amount." (Footnote omitted.) *Holloway v. State Farm Fire &c. Co.*, 245 Ga. App. 319, 322 (1) (b) (537 SE2d 121) (2000).

> "A claim is unliquidated when there is a bona fide contention as to the amount owing. A liquidated claim is an amount certain and fixed, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof." The word "liquidated" as used in OCGA § 7-4-15 means "settled, acknowledged, or agreed."

(Footnotes omitted.) Id. at 321 (1) (b). And the parties may stipulate that the damages are liquidated. E.g., *Florida Intl. Indem. Co. v. Osgood*, 233 Ga. App. 111, 116 (4) (503 SE2d 371) (1998).

Because the claim here was for a settled, acknowledged and agreed-upon amount, the award of prejudgment interest was mandatory rather than discretionary and should have been awarded by the judge as a matter of law. *Holloway v. State Farm Fire &c. Co.*, 245 Ga. App. at 322 (2); *Rivergate Corp. v. Atlanta Indoor Advertising Concepts*, 210 Ga. App. 501, 503 (3) (436 SE2d 697) (1993).

We thus reverse and remand this case for the probate court to enter a judgment for prejudgment interest, calculated from the time Herndon transferred the estate's assets to the executors.[8]

*Judgment affirmed in Case No. A07A2333. Judgment reversed and case remanded with direction in Case No. A07A2334. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 4, 2008 —

---

[8] "The rule is that interest must be awarded on a liquidated sum from the time the liability arises." *Wheels & Brakes v. Capital Ford Truck Sales*, 167 Ga. App. 532, 534 (2) (307 SE2d 13) (1983).

*Almand & Wiggins, O. Hale Almand, Jr.,* for appellant.
*James, Bates, Pope & Spivey, Duke R. Groover, Stephen Louis A. Dillard, Chamberlain, Hrdlicka, White, Williams & Martin, Eric C. White, James L. Paul,* for appellee.