A11A2097, A11A2150. OLD PEACHTREE PARTNERS, LLC et al. v. GWINNETT COUNTY; and vice versa.
(726 SE2d 437)

BOGGS, Judge.

In these consolidated appeals, we granted interlocutory review of a trial court order denying cross-motions for summary judgment filed by Gwinnett County, Georgia ("the County"), and Old Peachtree Partners, LLC and Gwinnett Community Bank (collectively "Old Peachtree"). In Case No. A11A2097, we reverse in part the trial court's denial of Old Peachtree's motion for summary judgment, and Case No. A11A2150 is dismissed as moot.

"On appeal from the denial of summary judgment the appellate court is to conduct a de novo review of the evidence to determine

---

whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010).

The record reveals that beginning in 2005, the County funded engineering and land acquisition activities for the McGinnis Ferry Road extension. As part of this project, the County sought to acquire a fee simple right-of-way and easements from property owned by Old Peachtree. In August 2007, Old Peachtree executed an option agreement giving the County an irrevocable option to purchase from Old Peachtree, within 120 days of the date of the option, 1.867 acres of property for right-of-way and permanent easements for $1,100,000. But when Old Peachtree discovered that the County intended to install a forced main sewer across its property after the purchase of the right-of-way, it informed the County in an October 9, 2007 letter that such action would result in the inverse condemnation of Old Peachtree's remaining 14 acres of property, destroying its ability to develop that portion of the property. Old Peachtree stated further that it would not proceed with the closing unless the County compensated it for the inverse condemnation of the property that would be affected by the forced main sewer.

Although Old Peachtree essentially withdrew the option in the October 9 letter, the County commission ("the Board") nevertheless voted to approve the County's exercise of the option. On December 19, 2007, the County notified Old Peachtree that it was exercising the option to purchase the right-of-way and easements, and that it was ready to close the transaction. When Old Peachtree failed to proceed with the closing, the County sued for breach of contract and specific performance.[1] Old Peachtree answered alleging that the County failed to satisfy a condition precedent to executing the option agreement, and also counterclaimed for inverse condemnation and fraud.

In the summer of 2009, the parties began to discuss a settlement to resolve the pending litigation. On May 1, 2009, Old Peachtree presented the County with a written offer of settlement. Four days later, however, the Board rejected the offer during an executive session, but authorized the county attorney to present Old Peachtree with a counter-offer of settlement that included the sale of the original 1.857 acres plus an additional 15-acre tract. The County, in a letter dated May 8, 2009, presented Old Peachtree with the counter-offer of settlement. This agreement (hereinafter "the settlement

---

[1] The County also filed a separate condemnation action against Old Peachtree.

agreement") provided in part:

> [I]n an effort to bring to above-referenced matter [the pending litigation], as well as the condemnation matter involving the parties, to a resolution, the Board has authorized the following counter-offer of settlement: . . . The condemnation action involving the . . . 1.867 acres . . . will be resolved for the total amount of $1,100,000 . . . and Old Peachtree Partners, LLC will sell the approximately 15.0 acres of property . . . as referenced in your offer of settlement to Gwinnett County, for $4,875,000. . . . This counter-offer of settlement will remain open for acceptance until May 15, 2009.

Old Peachtree accepted the counter-offer in a teleconference with the assistant county attorney on May 12, 2009. The parties then began preparing the documents that were the subject of the settlement agreement, including a purchase agreement and a mutual release.

On June 2, 2009, the Board held a public meeting. The agenda for that meeting included as an item: "Approval/authorization for Chairman to execute Purchase and Sale Agreement between Gwinnett County, Georgia and Old Peachtree Partners." Old Peachtree signed the purchase agreement and notarized it on June 13, 2009, with the intention of proceeding with the sale of the property. But on August 4, 2009, in an open session, the Board voted against the purchase of the property from Old Peachtree.[2]

Following the parties' failure to settle, the County filed a motion for partial summary judgment on its claim that the 2007 option agreement was a valid and binding contract, and that Old Peachtree breached that agreement by failing and refusing to convey the property. Old Peachtree filed a cross-motion for summary judgment on the County's claim for specific performance, arguing that option agreement was unenforceable because the offer was revoked prior to the County's acceptance and because there was a lack of consideration. Old Peachtree later amended its cross-motion for summary judgment to allege that the County breached the 2009 settlement agreement.

---

[2] One of the commissioners deposed that he believed the Board voted against the settlement offer because of an e-mail from the Gwinnett County district attorney, and a second commissioner deposed that he "felt [the e-mail] to be a consideration." This e-mail, sent to each Board member on June 1, 2009 stated:

> Frankly, it is with a great deal of shock that I read this agenda item [(the purchase of Old Peachtree's property)] particularly with what I know about the ownership of the property and in this time of budgetary distress. If this item goes forward tomorrow, you can expect to be explaining this and other recent land purchases to the Grand Jury.

The trial court, in denying the cross-motions for summary judgment, ruled that a genuine issue of material fact exists concerning whether the County induced Old Peachtree to enter into the option agreement by "misrepresenting its intended purpose for acquiring the property and/or whether there was a material change in circumstances such that would entitle [Old Peachtree] to withdraw or rescind the [o]ption [a]greement." The court ruled further that the counter-offer of settlement was conditioned upon the approval by the Board of Commissioners at a public meeting, and that since the Board never approved the settlement agreement, the parties are not bound by the proposed settlement. The court then certified its order for immediate review.

### Case No. A11A2097

1. Old Peachtree enumerates as error the trial court's ruling that the settlement agreement was unenforceable.

> Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. In this regard, it is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense. An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort.

(Citation and punctuation omitted.) *Powerhouse Custom Homes v. 84 Lumber Co.*, 307 Ga. App. 605, 607 (705 SE2d 704) (2011). "In considering the enforceability of an alleged settlement agreement . . . a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed." (Citation and punctuation omitted.) *Arrow Exterminators v. Gates Condo. Homeowners Assn.*, 294 Ga. App. 620, 621-622 (1) (669 SE2d 421) (2008). "Whether a settlement is an enforceable agreement is a question of law for the trial court to decide." (Citation and punctuation omitted.) *USA Manufacturing Corp. v. Perfection-Schwank*, 271 Ga. App. 636, 638 (1) (610 SE2d 600) (2005).

The issue presented here is whether the settlement agreement is enforceable. The County argues that there was no agreement to settle because the requirement that the settlement agreement be approved

with a Board vote in a public meeting was a condition precedent that was not satisfied. But as explained below, the requirement that the Board approve the purchase at a public meeting, while provided for in the purchase agreement, was not a condition of the settlement agreement. And it was the Board that, in fact, authorized the county attorney to make a counteroffer of settlement with knowledge that the County's duty pursuant to that settlement would later require the Board's own approval of the purchase agreement by a Board vote in a public meeting.

It is undisputed that the county attorney was authorized to present Old Peachtree with the counteroffer of settlement; the counteroffer letter expressly provided "the Board had authorized the following counter-offer of settlement." Old Peachtree presented uncontradicted evidence that it orally accepted the County's offer by telephone on May 12, 2009. See, e.g., *Smith v. Davis*, 245 Ga. App. 34, 35, n. 4 (536 SE2d 261) (2000) (oral acceptance of written offer satisfies Statute of Frauds). The parties therefore exchanged mutually interdependent promises: the County offered to settle all pending disputes between the parties in exchange for the purchase of Old Peachtree's property, and Old Peachtree accepted the offer, thereby establishing a contract. See also, e.g., *Bd. of Regents &c. v. Doe*, 278 Ga. App. 878, 881 (1) (a) (630 SE2d 85) (2006) ("A contract may be formed . . . when the parties exchange mutually interdependent promises. [Cit.]"); see also *DeRossett Enterprises v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728, 729 (1) (621 SE2d 755) (2005) (acceptance of counter-offer sufficient to create settlement agreement).

Nonetheless, the trial court found, and the County argues, that both parties operated under the assumption that the settlement agreement was conditioned upon approval in a public meeting based upon e-mails between the parties and language in the purchase agreement signed by Old Peachtree. On May 14, 2009, the assistant county attorney sent a draft of the purchase agreement by e-mail to counsel for Old Peachtree. The parties discussed proposed changes to the purchase agreement over the next few days, and in an e-mail dated May 26, 2009, counsel for Old Peachtree informed the assistant county attorney, "I would like to have my folks sign [the purchase agreement] before the [c]ommission meeting on June 2nd." In a May 29 e-mail, counsel for Old Peachtree stated that the documents presented by the County (including the purchase agreement, a mutual release, and final consent order) were acceptable and that "My client will sign the [p]urchase and [s]ale [a]greement and drop off to you today." The last line of the purchase agreement provided: "This Agreement is hereby accepted this ___ day of ___, 2009, subject to approval by the Gwinnett County Board of Commissioners in a public

meeting." And between the spaces provided for the seller's signature and the purchaser's signature was a line that read: "This Agreement approved by the Gwinnett County Board of Commissioners in a public meeting this ___ day of June, 2009." But the e-mails sent by Old Peachtree's counsel and Old Peachtree's signature on the purchase agreement tend rather to show that Old Peachtree considered the public vote to be a mere formality.[3]

The Supreme Court of Georgia's decision in *Jackson Elec. Membership Corp. v. Ga. Power Co.*, 257 Ga. 772 (364 SE2d 556) (1988), is instructive here. In *Jackson,* an electric membership corporation ("EMC") filed suit contending that it had a contract with a business to supply electricity, and that the business breached the contract. Id. at 772-773. The trial court ruled that because the business had not applied for membership to the EMC as required by the contract, and because the EMC could refuse to accept the business as a member, the "attempt to contract failed due to lack of mutuality of obligation." Id. at 773. On appeal, however, the Supreme Court of Georgia ruled that a valid contract existed because the parties had exchanged mutually interdependent promises. Id. at 773-774 (1). The court held that "membership in the corporation is a condition precedent not to the contract but to the existence and enforcement of an immediate right, that the parties have an implied duty to exercise good faith in accomplishing the condition precedent and that the condition is a mere formality." Id. at 774 (1).

Similarly, in *Doe*, supra, 278 Ga. App. at 878, the Board of Regents authorized Georgia Tech to conduct a search for a new dean. Id. at 879. Georgia Tech conducted the search, offered the position to Doe in a letter that provided that the offer was "tentative pending approval of the Board of Regents," and Doe accepted the offer. Id. Georgia Tech announced that Doe would be the incoming dean, allowed him to meet with faculty concerning administrative matters, and encouraged him to conduct fundraising activities. Id. When Georgia Tech officials were informed of allegations of inappropriate behavior by Doe, Georgia Tech withdrew the recommendation and the Board did not vote on Doe's approval. Id. at 880. Our court held that "Georgia Tech and Doe formed a contract when they exchanged

---

[3] The County also points to the Board's written policy that "while land acquisition may be discussed in a closed meeting, any vote will be taken in a public meeting," and argues that this policy constituted an express limitation on the settlement authority of the county attorney. But this does not affect our analysis here because while this Board's policy may have been an express limitation on its ability to approve the acquisition of land, it did not constitute an express limitation on the county attorney's authority to make a counter-offer of settlement which was unconditional in this case.

'mutually interdependent promises' that contained all of the essential terms of a contract. The provision regarding the Board's approval created an implied duty for both parties to exercise good faith in securing such approval." Id. at 882 (1) (b). Here, as in *Jackson* and *Doe*, a contract was formed between the County and Old Peachtree, and a condition of contract performance was the approval of the purchase agreement by a Board vote in a public meeting.

Although the trial court's order notes that Old Peachtree took no steps to determine the extent of the county attorney's authority to settle the matter, such steps were not necessary where, as here, the settlement offer plainly states that the Board authorized the counter-offer of settlement, and the county attorney had the authority to act on behalf of the county pursuant to a county ordinance. See Gwinnett County Code of Ordinances, Part II, Ch. 2, Art. III, Div. 5, Sec. 2-106 (5) and (10); *DeKalb County v. DRS Investments*, 260 Ga. App. 225, 226-227 (1) (581 SE2d 573) (2003) (county attorney had unconditional authority to bind county pursuant to county ordinance); see also OCGA § 36-60-13 (a) (county authorized to enter into purchase of real property); OCGA § 45-6-5 (powers of public officers are defined by law). Nothing in OCGA § 45-6-5 or *DRS Investments*, supra, mandates a different result, because they do not alter the county attorney's authority to make the settlement offer on behalf of the Board. As we have explained, while a vote in a public meeting was a required formality to effectuate the purchase of the property, the Board's failure to complete that formality in good faith when voting in the public meeting cannot destroy an already existing settlement agreement.

The settlement agreement was therefore enforceable, and the trial court erred in denying Old Peachtree's motion for summary judgment on this ground.

2. Old Peachtree also contends that the trial court erred in denying its motion for summary judgment on its assertion that the option agreement is unenforceable. But this claim is rendered moot by our holding in Division 1 that there was a valid settlement agreement to settle the pending claims between the parties, including those arising from the option agreement.

### Case No. A11A2150

3. Because we have held in Division 1 that the settlement agreement was enforceable, the County's appeal from the trial court's denial of its motion for summary judgment on its claim that Old Peachtree breached the option agreement is dismissed as moot.

*Judgment affirmed in part and reversed in part in Case No. A11A2097. Appeal dismissed in Case No. A11A2150. Mikell, P. J., and Miller, J., concur.*

DECIDED MARCH 8, 2012 —

*Webb, Tanner & Powell, Anthony O. Powell, Balch & Bingham, Malissa Kaufold-Wiggins, Michael J. Bowers,* for appellants.

*Michael P. Ludwiczak, Karen G. Thomas, Michael V. Stephens,* for appellee.