**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 23, 2014**

# In the Court of Appeals of Georgia

A14A1173.  GWINNETT  COUNTY  v.  OLD  PEACHTREE
     PARTNERS, LLC.

BARNES, Presiding Judge.

This is the second appearance of this case arising out of a settlement in which
Gwinnett County agreed to, among other things, purchase 16.203 acres of property
from Old Peachtree Partners, LLC for the price of $5.2 million. The settlement was
reached to resolve all of the pending litigation between the parties, including a
condemnation action that had been filed by the County. The trial court initially
concluded that the settlement agreement was unenforceable, but this Court reversed
and held that the County was bound by the settlement. See *Old Peachtree Partners,
LLC v. Gwinnett County*, 315 Ga. App. 342, 345-348 (1) (726 SE2d 437) (2012)
("*Old Peachtree Partners I*"). Following remand, the trial court entered an order
enforcing the settlement, and the parties closed on the transaction, with the County
paying Old Peachtree for the purchase of the 16.203 acres. The trial court ultimately

awarded prejudgment interest to Old Peachtree on the purchase price for the 16.203 acres of property and ruled that Old Peachtree was entitled to a trial on its claim for incidental damages. The County now appeals the trial court's award of prejudgment interest and its grant of a trial on Old Peachtree's claim for incidental damages. For the reasons discussed below, we affirm.

This case began with Gwinnett County filing two lawsuits seeking to acquire property owned by Old Peachtree for a public road extension project.[1] Old Peachtree owned two adjacent parcels of property in Gwinnett County located in the area of the road extension, the first parcel consisting of 1.867 acres and the second parcel consisting of 16.203 acres. In the first lawsuit filed against Old Peachtree in April 2008, the County asserted claims for specific performance and breach of contract, seeking to enforce the terms of an option agreement to purchase Old Peachtree's first parcel of property for $1,100,000. Old Peachtree answered, alleging that the County had failed to satisfy a condition precedent to exercising the option. Old Peachtree also asserted counterclaims for fraud and for inverse condemnation of its second parcel of property, contending that the County's installation of a sewer line across its

_____

[1] The underlying facts are set out in greater detail in the prior appeal of this case, *Old Peachtree Partners I*, 315 Ga. App. at 342-345.

property after acquiring the first parcel would destroy Old Peachtree's ability to develop the second parcel.

While the first lawsuit was pending, the County filed a second lawsuit against Old Peachtree. The second suit was a condemnation action instituted for the purpose of acquiring Old Peachtree's first parcel of property for the road extension.

In the summer of 2009, the parties began to discuss a settlement to resolve the pending litigation, including the condemnation action. Old Peachtree presented the County with a written offer of settlement on May 1, 2009, and on May 5, 2009, the Gwinnett County Board of Commissioners (the "Board") met in executive session and rejected the offer. However, the Board authorized the county attorney to present Old Peachtree with a counteroffer of settlement to resolve both pending lawsuits, and the attorney conveyed the counteroffer to Old Peachtree by letter dated May 8, 2009. The counteroffer included payment by the County of $1,100,000 for the first parcel that was the subject of the condemnation action, and $5,265,975 for the second parcel that Old Peachtree argued had been inversely condemned. Under the terms of the counteroffer, the County offered to settle all pending disputes between the parties in exchange for Old Peachtree agreeing to the aforementioned prices as payment for the

two parcels. On May 12, 2009, Old Peachtree, through its attorney, verbally accepted the County's settlement counteroffer.

The parties began preparing the documents that were the subject of the settlement agreement, including a purchase and sale agreement, a final consent order, and a mutual general release. Old Peachtree signed and delivered the settlement documents to the County on June 13, 2009. However, on August 4, 2009, the Board voted against the purchase of Old Peachtree's property.

After the County refused to carry out the settlement agreement, Old Peachtree filed a counterclaim in the first lawsuit for breach of that agreement. In its prayer for relief, Old Peachtree prayed for damages, prejudgment interest, and "such other and further relief as the [trial court] deem[ed] just, equitable and proper under the facts, circumstances, and evidence presented in this case." The parties then filed cross-motions for summary judgment relating to the enforceability of the option agreement and the settlement agreement. The County argued, among other things, that the settlement agreement was unenforceable because approval of the purchase by the full Board at a public meeting was a condition precedent to the settlement that had not been satisfied. The trial court agreed with the County and ruled that the parties were not bound by the settlement.

4

Old Peachtree appealed the trial court's ruling on the enforceability of the settlement to this Court. We reversed the trial court, concluding that approval of the full Board was not a condition of the settlement agreement and that the county attorney had authority to extend the settlement counteroffer to Old Peachtree that was accepted on May 12, 2009. See *Old Peachtree Partners I*, 315 Ga. App. at 345-348 (1). We therefore concluded that the settlement agreement was binding and enforceable against the County. See id.

After the Supreme Court of Georgia denied certiorari, Old Peachtree made written demands to the County on January 14, 2013 and February 1, 2013 seeking payment for the two parcels of Old Peachtree's property referenced in the settlement agreement, plus prejudgment interest and other damages. The Board rejected the demands on February 5, 2013.

Old Peachtree then filed a motion to enforce the settlement agreement on February 22, 2013. Old Peachtree sought specific performance of the settlement agreement and prejudgment interest under OCGA § 7-4-15 on the purchase price owed by the County for the two parcels of Old Peachtree's property. Old Peachtree also requested a trial on the incidental damages it allegedly had incurred as a result of the County's refusal to carry through with the settlement agreement. Specifically,

5

Old Peachtree argued that it was entitled to recover the costs (i.e., property taxes, interest on the property's mortgage, and property insurance) it had incurred in continuing to maintain the property since 2009 when the County should have taken possession of the property pursuant to the settlement agreement.

The County initially opposed the motion, but ultimately consented to the trial court awarding specific performance. On April 10, 2013, the trial court granted Old Peachtree's motion to enforce the settlement agreement. The trial court ordered the County to tender into the court registry in the condemnation action the full amount it had agreed to pay for the first parcel of Old Peachtree's property. The court further ordered the County to complete its purchase of the second parcel of Old Peachtree's property for the agreed upon price of $5,265,975. The trial court reserved ruling on the issues of prejudgment interest and incidental damages.

Pursuant to the trial court's enforcement order, on April 24, 2013, the County tendered the funds into the court registry in the condemnation action for the acquisition of Old Peachtree's first parcel of property. On May 7, 2013, the County complied with the enforcement order and acquired Old Peachtree's second parcel in exchange for the agreed-upon purchase price.

The trial court addressed the issue of prejudgment interest in a subsequent order entered on May 15, 2013. The trial court awarded prejudgment interest on the amount that the County had deposited into the court registry in the condemnation action for the first parcel of Old Peachtree's property on April 24, 2013, but not on the $5,265,975 purchase price that had been paid by the County for the second parcel on May 7, 2013. The trial court accepted the County's argument that the County was not obligated to pay prejudgment interest on the $5,265,975 because interest did not start to accrue on the purchase price until the County took actual possession of the second parcel, which did not occur until May 7, 2013, the same day that it made full payment to Old Peachtree. Consequently, the trial court found that no prejudgment interest was owed on the purchase price ultimately paid by the County for the second parcel.

Old Peachtree moved for reconsideration, contending that actual possession by the County of the second parcel was irrelevant in determining when prejudgment interest should start to accrue on the purchase price paid by the County. On October 16, 2013, the trial court granted Old Peachtree's motion for reconsideration, reversed its prior order, and ruled that Old Peachtree was entitled to $1,458,089.97 in prejudgment interest on the purchase price that the County had paid for the second

parcel pursuant to OCGA § 7-4-15. The trial court also ruled that Old Peachtree was entitled to a trial to determine the extent of its incidental damages.

Following the entry of its order granting Old Peachtree's motion for reconsideration, the trial court issued a certificate of immediate review. We granted the County's application for interlocutory appeal, and this appeal followed in which the County challenges the award of prejudgment interest and the grant of a trial on incidental damages.

1. The County contends that the trial court erred in granting Old Peachtree's motion for reconsideration and awarding prejudgment interest on the purchase price of Old Peachtree's second parcel of property under OCGA § 7-4-15. According to the County, Old Peachtree is prohibited from recovering prejudgment interest for three separate reasons: (a) interest did not begin to accrue until the County took actual possession of the second parcel; (b) Old Peachtree delayed requesting specific performance of the settlement agreement until after its successful appeal of the trial court's initial ruling that the agreement was unenforceable; and (c) interest did not begin to accrue until the County became bound to pay the purchase price of the second parcel, which did not occur until this Court reversed the trial court regarding

8

the enforceability of the settlement and the closing on the property occurred on remand. We will address the County's arguments each in turn.

(a) The County first argues that the trial court erred in awarding prejudgment interest on the purchase price of the second parcel under OCGA § 7-4-15 because interest should not have started to accrue until the County took actual possession of the parcel. We are unpersuaded.

OCGA § 7-4-15 provides in relevant part:

> All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of the demand. . . .

Pursuant to this statutory language, if the amount owed under a contract is "fixed, certain, and ascertainable under its terms," the claim is liquidated. *Rivergate Corp. v. Atlanta Indoor Advertising Concepts*, 210 Ga. App. 501, 503 (3) (436 SE2d 697) (1993). See also *In re Estate of Miraglia*, 290 Ga. App. 28, 31 (2) (658 SE2d 777) (2008) ("A liquidated claim is an amount certain and fixed, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof. The word 'liquidated' as used in OCGA § 7-4-15 means 'settled, acknowledged, or agreed.'") (citation and punctuation omitted). If a claim is

9

liquidated under OCGA § 7-4-15, the award of prejudgment interest is mandatory, should be awarded by the trial court as a matter of law, and accrues at the rate of seven percent per annum simple interest if the rate is not established in the parties' written contract. See OCGA § 7-4-2 (a) (1) (A); *Crisler v. Haugabook*, 290 Ga. 863, 864 (725 SE2d 318) (2012); *Hendricks v. Blake & Pendleton*, 221 Ga. App. 651, 653 (2) (472 SE2d 482) (1996). The only prerequisite is that "a demand for prejudgment interest [be made] prior to the entry of final judgment." *Crisler*, 290 Ga. at 864.

There is no dispute regarding the purchase price that the County was required to pay to Old Peachtree for its second parcel of property under the settlement agreement – $5,265,975. Hence, the purchase price for the second parcel was fixed, certain, and ascertainable under the terms of the parties' contract, such that the debt owed by the County was liquidated and subject to prejudgment interest under OCGA § 7-4-15. See *In re Estate of Miraglia*, 290 Ga. App. at 31 (2); *Rivergate Corp.*, 210 Ga. App. at 503 (3). The question then becomes at what point prejudgment interest began to accrue on the purchase price.

Generally speaking, prejudgment interest on an amount owed under a contract starts to run on the date the amount becomes due and payable. See *Turner Constr. Co. v. Elec. Distrib.*, 202 Ga. App. 726, 727 (3) (415 SE2d 325) (1992); *B&G Sanders &*

10

*Assoc. v. Castellow*, 154 Ga. App. 433, 434-435 (1) (268 SE2d 695) (1980); *Continental Carriers v. Seaboard Coast Line R. Co.*, 129 Ga. App. 889, 890 (2) (201 SE2d 826) (1973) (physical precedent only). Hence, interest on the purchase price owed for real estate starts to run when the purchase money becomes due under the parties' contract. See *Shepard v. Gettys*, 206 Ga. 392, 394 (57 SE2d 272) (1950) ("In the absence of an express agreement, [the] purchase money would not draw interest until it became due[.]"); *Hawkins v. Studdard*, 132 Ga. 265, 272 (4) (63 SE 852) (1909) (noting that interest on purchase money owed for real estate "would begin when payment should be made under the contract").

The parties' settlement agreement is silent as to when the County was required to pay the purchase price of $5,265,975 to Old Peachtree for the second parcel of property. When no time for payment of the purchase price is specified in a contract involving the sale of real estate, it is presumed that payment will be by cash upon delivery of the deed at closing. See 2 Daniel F. Hinkel, *Pindar's Ga. Real Estate Law and Procedure*, § 18:32 (7th ed. 2013). See also *Harrell v. Stovall*, 232 Ga. 359, 360 (2) (206 SE2d 493) (1974) (holding that where contract did not specify time for payment, payment for acreage adjustment had to be made in cash at closing rather than in form of installment payments). And if no time is specified in the contract for

11

when the closing will occur, the law presumes that a reasonable time was contemplated by the parties. See *Moog v. Palmour*, 115 Ga. App. 602, 602-603 (155 SE2d 692) (1967); *Teague v. Adair Realty & Loan Co.*, 92 Ga. App. 463, 466-467 (1) (88 SE2d 795) (1955). Thus, prejudgment interest on the purchase price for Old Peachtree's second parcel began to run on the date by which the closing should have occurred in this case.[2]

However, relying upon *Adams v. Foster*, 141 Ga. 438 (81 SE 438) (1914), and *Lively v. Munday*, 201 Ga. 409 (40 SE2d 62) (1946), the County argues that prejudgment interest did not begin to accrue until it took actual possession of the second parcel, which occurred pursuant to the trial court's order granting specific performance of the settlement agreement, long after the closing should have taken place if no breach had occurred.[3] Notably, under the County's reasoning predicated

---

[2] The settlement documents signed by Old Peachtree and delivered to the County on June 13, 2009 in an effort to carry through with the settlement indicated that the parties contemplated that closing would occur no later than 75 days after the execution of a purchase and sale agreement for the property.

[3] The County also relies heavily on *Hampton Island, LLC v. HAOP, LLC*, 317 Ga. App. 80 (731 SE2d 71) (2012), *Hampton Island, LLC v. HAOP, LLC*, 306 Ga. App. 542 (702 SE2d 770) (2010), and *Hughes v. Great Southern Midway Co.*, 265 Ga. 94 (454 SE2d 130) (1995) to support its argument that Old Peachtree was not entitled to prejudgment interest. However, neither of the *Hampton Island* cases include any discussion of a liquidated demand or the accrual of prejudgment interest,

on *Adams* and *Lively*, the County would owe no prejudgment interest at all because it paid Old Peachtree the full purchase price of the second parcel on the same day that it took actual possession of that parcel. We are unpersuaded by the County's argument because it is based upon a misreading of *Adams* and *Lively*.

In *Adams*, 141 Ga. at 439 (1), our Supreme Court stated in dicta that the "general rule[] in cases for specific performance" is "that a purchaser in possession of the realty which is the subject-matter of a contract must pay interest on the unpaid purchase money from the time when his possession commenced," but then went on to find the rule inapplicable in that case. Subsequently, in *Lively*, 201 Ga. at 421 (3), our Supreme Court addressed the situation where the purchasers "immediately went into possession" of the property when they entered into the sales contract with the buyer, and held that, given that circumstance, the purchasers were liable for interest on the purchase price "from the date of such entry." Citing to *Adams*, the Supreme Court ruled that the purchasers were required to "pay interest at the legal rate from

and thus neither case has any bearing on the outcome here. *Hughes*, in turn, addressed only whether a trial court's order awarding prejudgment interest constituted "an impermissible modification" of a previously entered final judgment. See *Hughes*, 265 Ga. at 96 (2). *Hughes* did not address the accrual period for prejudgment interest when specific performance of a settlement agreement involving real estate has been ordered by the trial court.

13

and after the date they acquired possession" of the property. *Lively*, 201 Ga. at 422 (3).

Subsequently, in *Shepard v. Gettys*, 206 Ga. 392, 394 (57 SE2d 272) (1950), our Supreme Court clarified when the rule referenced in dicta in *Adams* and then applied in *Lively* should control the awarding of prejudgment interest. Specifically, the Supreme Court clarified that *Lively* "does not hold that the mere act of taking possession created a liability for interest on the purchase-money." Id. Rather, the Supreme Court explained, *Lively* stands for the proposition that when a purchaser enters "immediately into possession" of the property upon entering into the sales contract and the contract is intended to be a "cash transaction," the purchase money debt matures and becomes due and payable at that point, triggering the accrual of prejudgment interest. Id. Outside the unique context where the contract is intended to be a cash transaction and there is no temporal delay between the purchaser entering into the sales contract and taking possession of the property, the rule is simply that the "purchase-money would not draw interest until it became due" under the sales contract. Id.

Accordingly, because the County did not enter "immediately into possession" of Old Peachtree's second parcel of property, the rule enunciated in *Adams* and *Lively*

14

for the awarding of prejudgment interest has no application. Rather, the rule that applies is that prejudgment interest began to run when the purchase money became due and payable under the settlement agreement. See *Shepard*, 206 Ga. at 394. And, as previously explained, the purchase money for the second parcel would have become due and payable at the intended closing of the purchase transaction, which should have occurred within a reasonable time after the parties entered into the settlement agreement. Thus, prejudgment interest on the purchase price for Old Peachtree's second parcel began to run on the date by which the closing should have occurred, not on the much later date when the County took actual possession of the parcel. Consequently, we reject the County's argument that the trial court erred in awarding prejudgment interest because the accrual period should not have started until it took actual possession of the second parcel owned by Old Peachtree.

(b) The County next contends that the trial court erred in awarding prejudgment interest on the purchase price of the second parcel because Old Peachtree delayed requesting specific performance of the settlement agreement until after its successful appeal to this Court in *Old Peachtree Partners I*, 315 Ga. App. 342. But the County notes in its brief that it ultimately consented to the trial court's decision to award specific performance of the settlement agreement despite the delay, and the County

15

does not challenge the trial court's order granting that relief on appeal. Any challenge that the County may have had to the timeliness of Old Peachtree's request for specific performance therefore has been waived, given the County's acquiesce to and failure to challenge the trial court's grant of that request. See generally *Robinson v. Moonraker Assoc.*, 205 Ga. App. 597, 598 (423 SE2d 44) (1992) (noting that "a litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of [the] same" on appeal).

In any event, the sole prerequisite for an award of prejudgment interest on a liquidated claim is that a demand be made before the entry of final judgment, so that the opposing party has an opportunity to contest an award of interest. *Crisler*, 290 Ga. at 864. Old Peachtree made written demands to the County on January 14, 2013 and February 1, 2013, and the County had a full and fair opportunity to contest an award of prejudgment interest in this case. Because the sole prerequisite for the award of prejudgment interest on a liquidated claim was satisfied, the County has failed to articulate a valid basis for reversal on this ground.

(c) The County also contends that the trial court erred in awarding prejudgment interest on the purchase price of the second parcel because interest did not begin to accrue until the County became bound to pay the purchase price of the second parcel,

16

which the County asserts did not occur until this Court reversed the trial court regarding the enforceability of the settlement and the closing on the property took place on remand.[4] Again, under the County's reasoning, it would owe no prejudgment interest at all, given that the County made full payment of the purchase price for the second parcel at the closing that occurred on remand. However, as explained supra in Division 1 (a), the purchase price for the second parcel became due, and prejudgment interest started to run, on the date by which the closing on the second parcel *should have occurred* if there had been no breach by the County, which would have been long before the closing actually occurred in this case on remand. The County's contention, therefore, is misplaced.

(d) For these combined reasons, we reject the County's three specific arguments that it raised in the court below and on appeal for why the trial court should have awarded no prejudgment interest. We will not consider any additional

---

[4] Relying upon *Grange Mut. Cas. Co. v. Kay*, 264 Ga. App. 139, 143-144 (4) (589 SE2d 711) (2003), the County argues that it was not bound to pay the purchase price under the settlement agreement until after the agreement was held to be enforceable by the courts. But *Grange Mut. Cas. Co.* involved the settlement of a claim asserted on behalf of a minor child, and in that context, the probate court was required to exercise judicial oversight and approve any settlement. See former OCGA § 29-2-16 (1997); *Anderson v. Jones*, 323 Ga. App. 311, 319-320 (3) (745 SE2d 787) (2013). In the instant case, no party was a minor, and no court approval was required for the settlement.

arguments regarding the propriety of the trial court's award of prejudgment interest that were neither raised nor ruled upon in the court below, given that we do not apply a "wrong for any reason" rule in evaluating an order on appeal. See, e.g., *Lowery v. Atlanta Heart Assoc.*, 266 Ga. App. 402, 404-405 (2) (597 SE2d 494) (2004).

2. The County also contends that the trial court erred in concluding that Old Peachtree was entitled to a trial on incidental damages. According to the County, Old Peachtree could not recover as incidental damages any of the costs it incurred in maintaining the second parcel from the time that the closing on the property should have occurred under the settlement agreement until the time that the actual closing took place. We disagree.

It is true that if a plaintiff obtains specific performance, he cannot also obtain "an award of damages which would have resulted from the defendant's failure to perform the parties' contract." *Clayton v. Deverell*, 257 Ga. 653, 654-655 (3) (362 SE2d 364) (1987). But "this does not mean that an award of specific performance automatically precludes an award of any monetary damages." Id. at 655 (4). Rather, our Supreme Court, quoting 5A *Corbin on Contracts* 473, § 1222 (1964), has explained that

18

specific performance at the end of a protracted litigation under compulsion is practically never full performance of the contract; instead, there has been an extensive and injurious partial breach. In such a case, the court should decree the payment of damages for the partial breach that has already occurred, even though obedience of the decree will prevent the commission of further breaches.

*Golden v. Frazier*, 244 Ga. 685, 688 (3) (261 SE2d 703) (1979). Hence, a trial court may award "incidental damages" to plaintiffs in addition to specific performance when necessary "to make them whole." Id. See *Clayton*, 257 Ga. at 655 (4). An example of incidental damages in this context would be the costs of maintaining insurance coverage on the property that were incurred by a plaintiff-seller from the time of the intended closing under the contract until the time of the actual closing. See *Golden*, 244 Ga. at 687-688 (3).

In light of this precedent, the trial court did not err in ruling that Old Peachtree was entitled to pursue a claim for incidental damages at trial. At the very least, Old Peachtree would be entitled to present evidence aimed at proving the costs of maintaining insurance coverage on the second parcel that it had incurred from the

time of the intended closing until the time of the actual closing.[5] See *Golden*, 244 Ga. at 687-688 (3). Accordingly, we discern no basis for reversal.

*Judgment affirmed. Boggs and Branch, JJ., concur.*

---

[5] The County argues that the Old Peachtree should not be entitled to recover as incidental damages "increased tax payments resulting from a change in federal law effective January 1, 2013." However, the trial court did not rule on this specific issue, and thus it would be premature for this Court to address it at this time. "[T]his Court is empaneled to review rulings by lower courts and will not address issues not ruled upon below." (Citation and punctuation omitted.) *Messaadi v. Messaadi*, 282 Ga. 126, 129 (3) (646 SE2d 230) (2007).