**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 20, 2023**

# In the Court of Appeals of Georgia

A23A0751. FOWLER OFFICE PARK, LLC v. GREENPRINTS ALLIANCE, INC. et al.

MCFADDEN, Presiding Judge.

This case arises out of Fowler Office Park, LLC's bid to purchase surplus property from the Georgia Department of Transportation. Fowler filed a complaint against the Department, the City of Woodstock, Woodstock employees Brian Stockton and Jeff Moon, and Greenprints Alliance, Inc. The complaint alleged that Fowler had a binding contract with the Department and set forth, among other things, claims for breach of contract and tortious interference with business relations for alleged attempts to get the Department to rescind or alter the contract. Woodstock, Stockton, Moon, and Greenprints filed motions for summary judgment, which the trial court granted. In support of its summary judgment rulings, the trial court found

that Fowler did not have a binding contract with the Department, that the Department was authorized to abandon the sale of the property under OCGA § 32-7-4 (b) (1) (A), and that Fowler had failed to show tortious interference with business relations by Greenprints.

Fowler appeals, challenging the trial court's findings. Because the record shows that a binding contract was in fact formed when the Department notified Fowler that its high bid had been accepted, we reverse the grant of summary judgment based on the erroneous finding to the contrary. We also reverse the grant of summary judgment based on the alternative ground that the Department properly abandoned the sale because there is a genuine issue of material fact as to whether the sale was actually abandoned. But there are no genuine issues of material fact as to the tortious interference claim against Greenprints, so we affirm that ruling.

1. *Facts and procedural posture.*

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant of summary judgment de novo, construing the evidence and all inferences drawn from it in a light favorable to the nonmovant." *Smartt v.*

*Eldridge*, 368 Ga. App. 256 (889 SE2d 443) (2023) (citation and punctuation omitted).

So viewed, the record shows that in May 2017, the Department put 15.4 acres of surplus property in Woodstock up for bid to the public. The Department issued a bid package which provided that the bid process was in compliance with OCGA § 32-7-4 (b) (1), set forth instructions for submitting bids, and included bid proposal forms. Those forms provided that a bid proposal constituted an option for the Department to accept or reject, and that if the Department accepted the high bidder's offer, "then, upon written notice of bid acceptance being received by the undersigned [bidder], this option becomes a binding contract between the undersigned and the Georgia Department of Transportation, subject to the following terms[.]" Those contract terms included the bidder's agreement to accept delivery of the quitclaim deed tendered by the Department; an agreement that the property is purchased "as is" with no warranty as to its quality or condition; an agreement that the sale is subject to all title exceptions, reservations, and easements whether or not of record; and the bidder's acknowledgment that he has inspected the property.

On May 26, 2017, Fowler submitted its bid in the amount of $70,000, along with a deposit of $7,000. On that same date, the Department sent a letter informing

Fowler that it was the highest bidder for purchase of the property, that Fowler would be contacted to arrange a closing date upon acceptance by the Department's commissioner, and that the remaining balance of $63,000 would be due at the time of closing and delivery of the quitclaim deed. On July 5, 2017, the commissioner signed a quitclaim deed for the property, identifying the Department as grantor and Fowler as grantee. That signed deed was not delivered to Fowler. But two days later, on July 7, 2017, the Department notified Fowler in writing that it had the executed quitclaim deed, requested payment of the outstanding $63,000 balance, provided an invoice for that amount to purchase the property, and indicated that the Department would mail the executed deed to Fowler upon receipt of the payment.

In a series of emails on that same date, Fowler asked to see the deed, the Department indicated that it could only provide an unsigned copy of the deed before the closing, and the Department then sent Fowler such an unsigned copy of the deed. Fowler subsequently made changes to that unsigned copy of the deed and sent it back to the Department. On July 20, 2017, the Department sent Fowler a letter stating that it denied Fowler's changes to the unsigned deed and that it was rescinding the bid offering and acceptance of any bids pursuant to OCGA § 32-7-4 (b) (1) (A).

The next day, Fowler submitted the remaining $63,000 payment and responded to the Department's letter, writing that the Department did not have authority to rescind the bid and that the parties had a binding contract. The Department subsequently notified Fowler the it would not rescind the bid and it delivered a revised quitclaim deed to Fowler, which included exceptions and reservations that were not part of the earlier unsigned copy of the deed that had been sent to Fowler.

Fowler later learned that after its successful high bid, Stockton, the director of economic development for Woodstock and a board member of Greenprints Alliance, Inc., had communicated with the Department and others about the possibility of canceling the bid or altering terms of the quitclaim deed. Moon, another Woodstock employee, had also made similar inquiries to the Department and others.

2. *Binding contract.*

Fowler asserts that the trial court erred in granting summary judgment to Woodstock on the ground that Fowler failed to show that it had a binding contract with the Department. We agree.

As set out above, the purchase bid proposal form provided that "if [Fowler] is the successful high bidder on this parcel and if the Georgia Department of Transportation accepts [Fowler's] offer, then, upon written notice of bid acceptance

5

being received by [Fowler], this option becomes a binding contract between [Fowler] and the Georgia Department of Transportation[.]" The record shows that Fowler was the successful high bidder, that the Department accepted Fowler's offer, and that Fowler received written notice of bid acceptance from the Department. Under these circumstances, "the [Department's written notice of its] acceptance of the bid created a binding contract[.]" *LPS Constr. Co. v. Ga. Dept. of Defense*, 228 Ga. App. 486, 488 (1) (491 SE2d 920) (1997) (binding contract formed by state department's acceptance of bid despite bidder's attempt to include a bid revision).

Indeed, in addressing the issue of sovereign immunity in its order, the trial court found that "[t]he point at which the [Department] notified Fowler Office Park . . . that they were the highest bidder, they became parties to a binding contract pursuant to [the Department's] own Bid Package[.]" Nevertheless, later in the same order, while addressing summary judgment issues, the trial court found that no binding contract had been formed. The trial court reasoned that Fowler, by sending a revised copy of the unsigned deed back to the Department, had made a counter-offer that showed no meeting of the minds.

It is true that "[a]n answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the

6

offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort." *Old Peachtree Partners v. Gwinnett County*, 315 Ga. App. 342, 345 (1) (726 SE2d 437) (2012) (citation and punctuation omitted). But contrary to the trial court's reasoning, when Fowler made changes to the copy of the unsigned deed and sent it to the Department, Fowler was not answering a pending contract offer because at that point the binding contract had already been formed. As explained above, the contract was created under the plain terms of the Department's bid proposal package when Fowler received written notice of the Department's acceptance of Fowler's offer as the highest bid. And it was only after that binding contract had been formed by such offer and acceptance that Fowler asked to see a copy of the deed and later made changes to it. Under these circumstances, Fowler's actions after the binding contract was already in existence did not constitute a counter-offer showing the lack of a meeting of the minds. Compare *Newcomer v. Newcomer*, 278 Ga. 776, 777 (1) (606 SE2d 238) (2004) (signing settlement document only after it was altered constituted counter-offer, not acceptance of offer, so no agreement formed); *Partain v. Pitts*, 338 Ga. App. 298, 301 (787 SE2d 354) (2016) (request for confirmation of settlement terms does not constitute a counter-offer).

We note that the Department argues that the bid package made it clear that formation of a binding contract was conditioned upon certain terms, including the requirement that the winning bidder accept delivery of the quitclaim deed tendered by the Department. But those terms set forth in the bid package were not conditions precedent to formation of a binding contract; rather, they were terms of the contract formed by the Department's acceptance of Fowler's bid. "Here, . . . , a contract was formed between [Fowler and the Department], and a condition of contract performance was the [acceptance of delivery of the tendered deed]." *Old Peachtree Partners*, supra at 348 (1). So the trial court's grant of summary judgment based on the erroneous finding that there was no binding contract must be reversed.

3. *Abandonment of the sale under OCGA § 32-7-4 (b) (1) (A)*.

Fowler enumerates that the trial court also erred in granting summary judgment to Woodstock on the alternative ground that the Department properly abandoned the sale of the property as authorized by OCGA § 32-7-4 (b) (1) (A). That code section provides that "[t]he department . . . shall have the right to reject any and all bids, in its discretion, to readvertise, or *to abandon the sale*." OCGA § 32-7-4 (b) (1) (A) (emphasis supplied). Pretermitting the legal question of whether this code section authorizes the Department to abandon a sale after a binding contract has been formed,

8

the record reveals that there is a genuine issue of material fact as to whether such an abandonment has occurred in this case.

It is true that the Department informed Fowler that it was rescinding the bid after he made changes to the unsigned deed. But when Fowler objected to that purported rescission, the Department subsequently notified Fowler that it was not rescinding the bid and it delivered a revised quitclaim deed to Fowler. Indeed, as found by the trial court, the Department noted at the summary judgment hearing that this revised deed remains tendered to Fowler and the Department has taken no action to rescind it. So there is a genuine issue of material fact as to whether the Department has abandoned the sale, and the trial court therefore erred in granting summary judgment to Woodstock on the ground that the Department had abandoned the sale under OCGA § 32-7-4 (b) (1) (A). See generally *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (summary judgment proper if there is no genuine issue as to any material fact); OCGA § 9-11-56 (c).

4. *Tortious interference with business relations.*

Fowler contends that the trial court erred in granting summary judgment to Greenprints on the claim for interference with business relations. We disagree.

9

To recover for tortious interference with business relations, a plaintiff must establish that the defendant: (1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff financial injury.

*Cook Pecan Co. v. McDaniel*, 344 Ga. App. 370, 374 (3) (810 SE2d 186) (2018) (citation and punctuation omitted). The trial court found that Fowler had failed to present any evidence showing that Greenprints took any action to interfere with Fowler's contract or business relations with the Department.

Fowler argues that actions taken by Stockton, who was a Greenprints board member as well as a Woodstock employee, support the tortious interference claim against Greenprints. But Greenprints has cited specific evidence in the record establishing that Stockton never acted on behalf of Greenprints with regard to the sale of the subject property. In his affidavit, Stockton, stated that any action he took related to the sale of the property was done solely in his official capacity as economic development director for Woodstock. Stockton swore that he did not take any action on behalf of or at the direction of Greenprints regarding the property or Fowler's attempt to purchase it; that Greenprints never authorized or directed him to communicate with anyone about the property or to take any action to interfere with

10

the sale of it; and that he did not contact anyone at the Department about the sale of the property on behalf of Greenprints.

Because Greenprints has pointed to evidence negating an essential element of Fowler's claim of tortious interference with business relations, Fowler "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." *Cowart*, supra at 623 (1) (a) (citation and punctuation omitted). But Fowler has failed to point to any such specific evidence giving rise to a triable issue as to any action taken by Greenprints that interfered with Fowler's purchase of the property.

The trial court therefore did not err in granting summary judgment on that claim.

*Judgment affirmed in part; reversed in part. Brown and Markle, JJ., concur.*

11